Argued September 5, affirmed October 10, rehearing denied November 27, 1916.

# STATE ex REL. *v.* EVANS.

## (160 Pac. 140.)

**Schools and School Districts—Annexation of District—Void Order Calling Election.**

1. An order calling an election on the question of whether a school district be annexed to a high school district is void for legal fraud and lack of jurisdiction if the district boundary board had no information concerning the number of legal voters in the school district except the statements found in the petition and remonstrance, and later developments reveal that the petition did not contain the names of the necessary one third of the legal voters.

**Quo Warranto—Abolition of Remedy—Substitution.**

2. By Section 363, L. O. L., the writ of *quo warranto* and information in the nature of *quo warranto* have been abolished, but only the forms have been done away with, as the remedies obtainable thereunder are still available by an action at law, prosecuted in the name of the state under the authority of Section 366.

[As to contrast between election contest and *quo warranto* proceedings, see note in Ann. Cas. 1913C, 161.]

**Schools and School Districts—Consolidation—Legality—Burden of Proof.**

3. In a statutory action in the nature of *quo warranto* requiring a district boundary board to show by what authority they acted in consolidating a school district with a union high school district, plaintiffs alleging the annexation was illegal because the requisite number of voters did not sign the petition for an election on the question, defendants must allege all the facts necessary to show that the school district was legally annexed; the burden of proof resting upon them to show that the two districts were legally consolidated.

**Schools and School Districts—Consolidation—Petition—Election—Statute.**

4. Under Section 4194, L. O. L., relative to elections to unite school districts for high school purposes, an election on the question of whether a school district be annexed to a union high school district was void, and the attempted annexation came to naught, unless the petition for the election from the school district was signed by not less than one third of the legal voters, the petition being jurisdictional and no petition at all unless in conformity with the statute.

**Evidence—Presumption—Doing of Prior Act.**

5. When the legality of a subsequent act depends upon the doing of a prior act, proof of the performance of the subsequent act may carry with it, until the contrary is shown, the presumption that the prior act was correctly done, the rule of presumption being not necessarily conclusive.

**Schools and School Districts—Consolidation—Attack by Quo Warranto—Evidence Dehors the Record.**

6. In *quo warranto* against a district boundary board demanding that it show by what authority it ordered the consolidation of a school and a high school district, complainants claiming that the annexation of the school district was not legal because the petition for the election on the question was not signed by the requisite number of voters, complainants could offer evidence *dehors* the record that the petition was not signed by the requisite number, the petition and order for election not of themselves proving the sufficiency of the petition.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.    Statement by MR. JUSTICE HARRIS.

This is an action by the state on the relation of School District No. 25, and others, against J. Ward Evans and others.   The following are the facts:

Petitions were circulated in seven school districts of the third class and numbered 35, 36, 39, 41, 43, 48 and 50, asking the district boundary board to call an election to unite them for high school purposes.   The petition for district No. 36 and one circulated in district No. 50 were not signed by one third of the legal voters, and for that reason they were not sufficient to authorize the holding of an election in those two districts.   Having received all the petitions from the seven school districts, the district boundary board ordered the holding of an election and caused a notice to be sent to the chairman of the board of school directors for each district, except districts 36 and 50, directing that the election be held.   Notices that the election would be held for the purpose of uniting districts 35, 39, 41, 43 and 48 were duly posted in each of those districts and at the election, which was held in the five districts, a majority voted for a union high school district.   Having canvassed the votes the district boundary board declared on September 1, 1914, that districts 35, 39, 41, 43 and 48 were duly united for

high school purposes under the name of Union High School District No. 1. The chairmen of the five school district boards, who by force of law became the directors of the union high school district, organized as directors of the union high school by electing J. Ward Evans as chairman and F. N. Lasley as clerk. A union high school was opened on September 28, 1914, and afterward a union high school building was constructed at an expense of about $9,000.

During September, 1914, but after the middle of the month, a petition was circulated in school district No. 25, a district of the third class, asking the district boundary board to direct that an election be held on November 7, 1914, for the purpose of uniting that school district with union high school district No. 1. The names of 15 persons were signed to the petition which was circulated in school district No. 25. A similar petition for the annexation of school district No. 25 was also circulated in the territory embraced within the boundaries of the union high school district. Acting upon these two petitions, the district boundary board on October 26, 1914, ordered that an election be held on November 7, 1914, to decide whether school district No. 25 should be annexed to union high school district No. 1. Before making the order of October 26, 1914, the district boundary board received a writing which will be called a remonstrance. After reciting that they had signed the petition for the annexation of school district No. 25 on account of a misunderstanding of the facts and praying "that no further action be taken upon said petition," the remonstrance is signed by 8 persons who had signed the petition which had been circulated in school district No. 25 for the annexation of the territory to the union high school district. Appended to the remonstrance was a writing

which, after confirming the recitals in the remon-
strance and requesting "that no proceedings be taken
compelling the joinder of said school district No. 25
with said union high school district No. 1," was signed
by 37 persons who represented themselves to be "legal
voters of school district No. 25." The remonstrance
was overruled by the district boundary board and no
attempt was made to review its decision. The elec-
tion was held on November 7, 1914, pursuant to notice
and the order of the district boundary board. In the
union high school district, 29 voted for and 2 voted
against annexation, while in school district No. 25, 4
votes were cast for and 16 given against consolidation.
After canvassing the votes the district boundary board
declared that school district No. 25 and union high
school district No. 1 "were legally united for high
school purposes." The chairman of the school board
of school district No. 25 refused to act as a director of
the union high school district. Claiming to be the
officers of union high school district No. 1 and assert-
ing that school district No. 25 is included within union
high school district No. 1, all the defendants except
E. D. Chamberlain levied a tax on November 14, 1914,
on all the taxable property within the union high school
district including district No. 25. Afterward, on Feb-
ruary 6, 1915, this action, which is the statutory sub-
stitute for the writ of *quo warranto* as well as for the
proceeding by information in the nature of *quo war-
ranto,* was commenced by the relators who as legal
voters and taxpayers of school district No. 25 demand
that the defendants be required to show by what au-
thority they have acted, and that the pretended con-
solidation of school district No. 25 with union high
school district No. 1 be dissolved. The trial court
ruled that no question could be raised against the valid-

82 Or.—4

ity of the election which was held on August 25th when the five school districts voted to consolidate for union high school purposes, for the reason that the relators did not reside in or pay taxes on any property within any of these five districts. The court found from the evidence that there were 41 legal voters qualified to vote at school elections in school district No. 25, and that there were "11 other legal voters of the State of Oregon who had not the property qualifications necessary to entitle them to vote at school elections"; that the name of H. Henriksen and E. Bourgeois should be stricken from the petition which was circulated in school district No. 25, because the former was not a legal voter, and the latter neither signed nor authorized her name to be signed to the petition; that the petition circulated in school district No. 25 was not signed by one third of the legal voters and consequently was not sufficient to confer jurisdiction, and that therefore school district No. 25 is not a part of the union high school district. A judgment was rendered for the relators in conformity with the findings made by the court, and the defendants appealed.

AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. Ephraim B. Seabrook.*

For respondents there was a brief and an oral argument by *Mr. John M. Haddock.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The relators allege that union high school district No. 1 does not legally exist, for the reason that the

petitions asked for the consolidation of seven school districts while the election was called to unite five districts. The defendants say that the relators cannot question the legality of the original organization of the high school district, because all of the relators reside in school district No. 25 and none of them pay taxes on property in any of the five school districts which were united by the original organization of the high school district. An examination of this phase of the controversy between the parties will not be necessary, because of the conclusions reached upon another branch of the case, and we shall therefore assume, without deciding, that as a result of the election which was held on August 25, 1914, the five school districts, numbered 35, 39, 41, 43 and 48, were legally consolidated as union high school district No. 1.

The relators have challenged the defendants to show any right or authority for treating school district No. 25 as a part of union high school district No. 1; the defendants justify their acts by alleging that school district No. 25 was legally annexed to the high school district by an election which was ordered and held after the district boundary board had received a petition for annexation from the high school district and a similar petition from school district No. 25 signed by more than one third of the "30 legal voters qualified to vote at school elections in said district, and more than one third of said legal qualified voters of said school district No. 25, to wit, 14 thereof." The relators reply by saying that the petition from school district No. 25 was only signed by 13 legal voters, because E. Bourgeois neither signed nor authorized her name to be signed to the petition and H. Henriksen was not a legal voter; and "that the number of legal voters of said district is now and was at all times herein re-

ferred to far more than three times the number of
legal voters who signed said petition." The defend-
ants allege and the relators deny that the petition from
school district No. 25 contained one third of the legal
voters in that district. As a part of their case, and
almost at the very beginning of the trial, the defend-
ants, in order "to show the number of legal voters in
the district *prima facie,*" offered, and the court re-
ceived in evidence, an annual report for the year end-
ing the third Monday in June, 1914, prepared by the
clerk of school district No. 25, filed with the county
school superintendent on July 15, 1914, showing the
"number of legal voters for school purposes in district
at time of making this report" to be 30. The relators
met the *"prima facie"* case of the defendants by offer-
ing parol evidence that H. Henriksen was not a legal
voter, that E. Bourgeois did not sign nor authorize
her name to be signed to the petition, and that there
were 41 legal voters in school district No. 25 when the
petition was filed with the district boundary board.
The defendants are now arguing that when the dis-
trict boundary board ordered the election, that tribunal
necessarily found the fact to be that the petition was
signed by a sufficient number of legal voters; that parol
evidence is not admissible in a *quo warranto* proceed-
ing, except where fraud is alleged, to show the fact
to be that a petition is not signed by a sufficient number
of legal voters; that while this proceeding may be "a
direct attack on the record sustaining the organiza-
tion, it is a collateral attack upon a finding of fact,"
and hence the fact found by the district boundary board
is conclusive here, and therefore parol evidence was
not admissible to impeach that finding unless it is
tainted with fraud.

1. Before undertaking to determine the question raised by the appellants, it may be helpful to make some further explanation of the record. The petition from school district No. 25 does not recite that it was signed by one third of the legal voters, and the accompanying certificate of the chairman and clerk only certifies that the petition "contains the legal voters, at school elections of this district, to the best of my knowledge and belief." The district boundary board did not make an express finding that the petition was in fact signed by one third of the legal voters, nor is it shown or even claimed that the board had any evidence of the number of legal voters except the petition and the remonstrance; and those two papers, when taken alone without further information, warned the board that the petition might not contain one third of the legal voters, and consequently, in the language of *State* v. *Woods,* 233 Mo. 357 (135 S. W. 932), an order calling an election would be "void for legal fraud and lack of jurisdiction" if the board had no information concerning the number of legal voters except the statements found in the petition and remonstrance and later developments revealed that the petition did not contain the names of one third of the legal voters.

2. The writ of *quo warranto* and information in the nature of *quo warranto* have been abolished by statute, and yet only the forms have been done away with, because the remedies which were obtainable under those forms are still available by an action at law which is prosecuted in the mode prescribed by legislative enactment: Section 363, L. O. L.; *State ex rel.* v. *Cook,* 39 Or. 377 (65 Pac. 89); *In re State* v. *Millis,* 61 Or. 245 (119 Pac. 763). Authority for the maintenance of this action is found in Section 366, L. O. L., where it is

provided that an action at law may be maintained in the name of the state:

"1. When any person shall usurp, intrude into, or unlawfully hold, or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation either public or private, created or formed by or under the authority of this state. * * 3. When any association or number of persons act within this state, as a corporation, without being duly incorporated."

3. The defendants are asserting that school district No. 25 is a part of the union high school district, and before they can successfully meet the attack made by the complaint in this action they must allege all the facts necessary to show that school district No. 25 was legally annexed to the union high school district: 32 Cyc. 1453; High, Extra. Leg. Rem. (3 ed.), § 712. And the burden of proof rests upon the defendants to show that the two districts were legally consolidated: *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, 336 (124 Pac. 637, Ann. Cas. 1914C, 483); *People* v. *Karr,* 244 Ill. 374 (91 N. E. 485); *People* v. *Baldridge,* 267 Ill. 190 (108 N. E. 49); *People* v. *McDonald,* 264 Ill. 514 (106 N. E. 501, Ann. Cas. 1915C, 31); 10 Ency. of Ev. 454.

4, 5. The election was void, and the attempted annexation comes to naught unless the petition from school district No. 25 was signed by "not less than one third of the legal voters": Section 4194, L. O. L. The petition is jurisdictional, and unless it is signed by "not less than one third of the legal voters," it is in legal contemplation no petition at all, and consequently an order calling an election on a petition which does not contain the required number of signers is like an order calling an election without any petition. The appellants argue, however, that the petition and the

order for the election of themselves prove the sufficiency of the former, because the latter necessarily implies that the board found the fact to be that the petition was signed by the required number of legal voters; and that while a *quo warranto* proceeding is a direct assault on whatever may be written in the record, it is nevertheless a collateral attack on the finding of fact which is implied from the order for the election. It is true that when the legality of a subsequent act depends upon the doing of a prior act, proof of the performance of the subsequent act may carry with it, until the contrary is shown, the presumption that the prior act was correctly done: *State* v. *Port of Tillamook,* 62 Or. 332, 339 (124 Pac. 637, Ann. Cas. 1914C, 483); *Anderson* v. *Stayton State Bank, post,* p. 357 (159 Pac. 1033); *Brownell* v. *Palmer,* 22 Conn. 107; 9 Ency. of Ev. 953. But this rule of presumption is not necessarily conclusive, and does not always bar the doors to truth when the truth is different from the presumption, for, as was said in *Knox County* v. *Ninth National Bank,* 147 U. S. 91 (37 L. Ed. 93, 13 Sup. Ct. Rep. 267):

"There is a marked difference between an omission to prove one step in a prescribed course of proceeding and evidence that such step was not taken."

6. This action was commenced for the express purpose of showing that school district No. 25 was not legally annexed, and the single result sought to be accomplished is the annulment of an order without which the annexation is void, and therefore a direct attack is being made upon the order: *Morrill* v. *Morrill,* 20 Or. 96, 101 (25 Pac. 362, 23 Am. St. Rep. 95, 11 L. R. A. 155). Actions involving questions like the one presented here have been referred to or treated by this court as direct attacks: *State* v. *Port of Tillamook,*

62 Or. 332, 337 (124 Pac. 637, Ann. Cas. 1914C, 483);
*Splonskofsky* v. *Minto,* 62 Or. 560, 571 (126 Pac. 15);
*Bennett Trust Co.* v. *Sengstacken,* 58 Or. 333, 352 (113
Pac. 863); *School Dist.* v. *School Dist.,* 34 Or. 97, 99
(55 Pac. 98). See, also, *Tyree* v. *Crystal Dist. Imp.
Co.,* 64 Or. 251 (126 Pac. 605). The same result has
been reached in other jurisdictions: *People* v. *Barber,*
265 Ill. 316 (106 N. E. 798); *People* v. *Peoria,* 166 Ill.
517 (46 N. E. 1075); *People* v. *McDonald,* 264 Ill.
514 (106 N. E. 501, Ann. Cas. 1915C, 31); *State* v.
*Woods,* 233 Mo. 357 (135 S. W. 932). Since this
action is a direct attack upon the right to make the
order, those who prosecute the attack can show that
jurisdiction never attached, and for the purpose of
showing the truth may offer evidence *dehors* the
record: *People* v. *McDonald,* 264 Ill. 514 (106 N. E. 501,
Ann. Cas. 1915C, 31); *People* v. *Stratton,* 33 Colo. 464
(81 Pac. 245); *Kamp* v. *People,* 141 Ill. 9 (30 N. E. 680,
33 Am. St. Rep. 270); *State* v. *Clark,* 75 Neb. 620 (106
N. W. 971); *Territory* v. *Armstrong,* 6 Dak. 226 (50
N. W. 832); *State* v. *Independent School Dist. of Car-
bondale,* 29 Iowa, 264; 32 Cyc. 1461; 2 Spelling, Inj.
(2 ed.), § 1800.

The district boundary board is not a court of record,
but at the most it is only an inferior tribunal with
special and limited powers; the statute which pre-
scribes the procedure for annexing territory to a union
high school district does not expressly provide for a
hearing on the petition, and makes no mention of an
appeal from an order for an election, so that there is
no room to claim that another adequate remedy besides
*quo warranto* is available; and the attack made here
strikes at the right of the board to act at all and not
at the correctness or wisdom of a decision which the
board has made after jurisdiction is indubitably con-

ferred. These features readily distinguish the instant case from authorities relied upon by defendants like *State* v. *Briggs,* 45 Or. 366 (77 Pac. 750, 78 Pac. 361, 2 Ann. Cas. 424); *State* v. *Port of Bay City,* 64 Or. 139 (129 Pac. 496); *Stettler* v. *O'Hara,* 69 Or. 519 (139 Pac. 743, Ann. Cas. 1916A, 217); *Louisville Co.* v. *Garrett,* 231 U. S. 298 (58 L. Ed. 229, 34 Sup. Ct. Rep. 48); *State* v. *Houser,* 122 Wis. 534 (100 N. W. 964); *Chicago Co.* v. *Babcock,* 204 U. S. 585 (51 L. Ed. 636, 27 Sup. Ct. Rep. 326); *Rate Cases,* 234 U. S. 476 (58 L. Ed. 1408, 34 Sup. Ct. Rep. 986); *Bridge Co.* v. *United States,* 216 U. S. 177 (54 L. Ed. 435, 30 Sup. Ct. Rep. 356); *Howell* v. *Howell,* 151 N. C. 575 (66 S. E. 571); *People* v. *Waite,* 213 Ill. 421 (72 N. E. 1087). See, also, *Gill* v. *Commissioners,* 160 N. C. 176 (76 S. E. 203, 43 L. R. A. (N. S.) 293), for an explanation of *Howell* v. *Howell,* 151 N. C. 575 (66 S. E. 571), and 32 Cyc. 1425, for a statement of the holding in *People* v. *Waite,* 213 Ill. 421 (72 N. E. 1087). Quite a different question is presented when an assault is made upon an order or judgment or a court of record, or where another complete remedy is available, or when the attack is against the wisdom of a finding made by an officer or tribunal after jurisdiction has actually attached. Here the complainants strike directly against the right to make the order claiming that jurisdiction was never conferred; and they can go behind the record and show the truth. The judgment is affirmed.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.