Argued January 23, affirmed February 14, petition for rehearing
denied March 12, 1952.

# SCHOOL DISTRICT No. 68 ET AL. *v.*
# HOSKINS ET AL.

240 P. 2d 949

George H. Layman, of Newberg, argued the cause for appellants. With him on the brief was Ernest J. Burrows, of Portland.

No appearance for respondents.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is a proceeding by writ of review, instituted by School District No. 68 of Yamhill county, Oregon,

for the purpose of having reviewed the action of the District Boundary Board of Yamhill county, relating to a change in boundaries of said district. The other plaintiffs, S. A. Stone, A. J. Lyon, Lucile Ingraham, G. C. Selby, O. W. Golden, and William A. Dopp, are residents, taxpayers, and legal voters of School District No. 68. The defendants H. M. Hoskins, county judge; A. W. Youngberg and Charles A. Newman, county commissioners; and Lynn Gubser, county school superintendent, constitute the District Boundary Board of Yamhill county. The other defendants, except Yamhill county, are the persons who, as legal voters, signed and filed the petition with the District Boundary Board, asking that the boundaries of School District No. 68 be changed by detaching from said school district and attaching to School District No. 10 of Yamhill county, a certain portion of School District No. 68, comprising a tract of 170.17 acres, more or less.

By order of the circuit court for Yamhill county, a writ of review was issued out of said court and duly served upon defendants. Defendants made their return to the writ, in which they certified to the circuit court a full, true, and correct transcript of the record and proceedings for the change of boundaries of said School District No. 68, had before and in the said District Boundary Board. The trial court entered judgment dismissing the writ. Plaintiffs appeal.

By the first three paragraphs of the petition for writ of review, plaintiffs identify the respective parties plaintiff and defendant and allege the filing of a petition asking that the boundaries of School District No. 68 be changed as above stated. It is then alleged that on April 12, 1950, the District Boundary Board made an order scheduling a hearing on said petition to be held May 3, 1950, and issued to the legal voters

of said School Districts No. 10 and 68 a notice of the time and place of said hearing; that such notice was posted in three places in each of said school districts on April 15, 1950.

The petition alleges that a hearing was held by the District Boundary Board on May 3, 1950, to consider the petition; that, at the time of said hearing, written remonstrances were filed against said petition, signed by 14 legal voters of School District No. 10 and 38 legal voters of School District No. 68, including the individual plaintiffs; and that School District No. 68 was represented in person at said hearing by its chairman, S. A. Stone, and its clerk, A. J. Lyon. The remainder of the petition, insofar as material to this appeal, alleges as follows:

"VI.

"That at said hearing arguments were presented on behalf of the said petition for boundary change; that said arguments were limited to the failure of a previously proposed consolidation with School District No. 29, the alleged need of police protection to preserve order at board meetings of School District No. 68, the adequacy of one room schools, the quality of teacher disipline [sic], and the alleged lack of harmony among the members of the school board of School District No. 68, all as shown by the minutes of the District Boundary Board covering said hearing; and that none of said arguments constituted any legal or practical basis for the change of boundaries of said school district.

"VII.

"That plaintiff above named, at said hearing, fully presented their arguments against the granting of said petition for change of school district boundaries, including the facts that removing 170 acres from the district would damage its status, that the proposed boundary change constituted obvious gerrymandering which would create district

boundaries having no relation to economic or geographic needs; that the proposed change would remove from the district two pupils living within one hundred yards of the school house, thus requiring them to travel a much longer distance to attend school in another district, that the majority of the legal voters of said School District No. 68 opposed the proposed change in boundaries, and that the granting of the said petition would in effect destroy the said School District No. 68 by indirection, a result beyond the limited power of the District Boundary Board.

## "VIII.

"That on May 8, 1950, the said District Boundary Board entered an order allowing the petition for change in boundaries, effective on June 30, 1950; that there is attached hereto, marked Exhibit A, and by reference made a part hereof, a map showing the present boundaries of School District No. 68 and the area proposed to be removed therefrom by the said order for change of boundaries.

## "IX.

"That the area ordered to be removed from said School District No. 68 by the said District Boundary Board constitutes 7% of the present area of said school district and 9½% of the total assessed valuation of property within said district.

## "X.

"That at the date of the said board order, namely, May 8, 1950, there were seven pupils of school age in said school district No. 68; that shortly before said date one of the pupils in said district had been killed in a tractor accident and one had moved away; that at the close of the school year one of said pupils graduated from said school, leaving six pupils in said district as of June 30, 1950, the effective date of the said order of said District Boundary Board; that the order of said District Boundary Board in removing by change of

boundaries two of said pupils left five pupils in said district as of May 8, 1950, and will leave four such pupils as of June 30, 1950; and that the District Boundary Board is wholly without legal authority to change the boundaries of any school district so as to leave therein less than six pupils of school age.

## "XI.

"That plaintiff School District No. 68 has been greatly injured by the said order of said District Boundary Board in that substantial area and valuation has [sic] been ordered removed from the district and sufficient pupils have been ordered removed therefrom to jeopardize the very existence of said district; that plaintiffs S. A. Stone, A. J. Lyon, Lucile Ingraham, G. C. Selby, O. W. Golden, and William A. Dopp have been injured by said order of said District Boundary Board in that as taxpayers their costs for school properties may be increased by reduction in assessed valuation of said district, and the said order has an adverse effect upon the maintenance and existence of a school within their community; and that plaintiffs Lucile Ingraham, G. C. Selby and O. W. Golden have been injured by the said order of the said District Boundary Board as parents of school children within said district in that the maintenance and existence of said school has been jeopardized, and the children may for [sic] forced to travel longer distances to attend school in another district.

## "XII.

"That petitioners have no right of appeal from the action of said District Boundary Board, nor have they any plain, speedy or adequate remedies at law or in equity.

## "XIII.

"That the action of said District Boundary Board, represented by said order of May 8, 1950, is contrary to law, arbitrary, unreasonable, and an abuse of discretion; that said District Boundary

Board exceeded its jurisdiction and legal authority and exercised its functions erroneously as follows:

"1. In entertaining said petition for change in boundaries;

"2. In overruling the said remonstrances to said petition;

"3. In granting the said petition for change of boundaries;

"4. In not dismissing said petition for want of jurisdiction; and that for these reasons the said order should be vacated and set aside by this court upon review."

In their return to the writ, defendants attached as exhibits duly certified copies of all records in the proceedings before the District Boundary Board. First is the petition for the change of boundaries, signed by ten legal voters of District No. 68 and six legal voters of District No. 10. This petition contains a description by metes and bounds of the land involved in the proposed change. Next is the order of the Board fixing May 3, 1950, and the county court room in McMinnville, Oregon, as the time and place of hearing. Then appears the "Notice of Boundary Board Hearing", giving notice of the time and place of such hearing, its purpose, and containing a detailed description of the property involved. This notice is dated April 12, 1950. Then, in order, appear the following documents: (1) proof of posting of notices on April 15, 1950, in three public places in each of the two school districts involved; (2) the record of the proceedings before the Boundary Board on May 3, 1950; (3) two written remonstrances against the proposed change, signed by 38 legal voters of School District No. 68 and 14 legal voters of School District No. 10; (4) the order of the Boundary Board, dated May 8, 1950, granting the petition for change in boundaries; and (5) a descrip-

tion of School District No. 68 by metes and bounds as it remains after detaching therefrom that portion thereof described in the petition and attached to School District No. 10.

No testimony was taken upon the hearing, but representatives of those favoring the change, as well as of those opposed to it, were permitted to present their respective arguments for and against the proposal. A summary of the statements of these several individuals appears in the record of the proceedings before the Board on May 3, 1950. Upon the conclusion of these arguments and as the result of the absence, because of illness, of one of the members of the Board, "the question was laid on the table until such time as all of the members of the Boundary Board could be present and give further consideration to the petition before them." It was finally acted upon by the Boundary Board, with all members present, on May 8, 1950.

No question is raised by plaintiffs as to the regularity of the proceedings taken in connection with this matter. Their sole contention is based upon the proposition that the District Boundary Board abused its discretion, and that its action was arbitrary, unreasonable, and in excess of its jurisdiction.

Section 111-401, OCLA, provides:

"* * * The superintendent and the county court, or the board of commissioners in counties where this board is a separate body, shall constitute a board for laying off his county in convenient school districts, such board to be styled the district boundary board. *Said board shall make alterations and changes in the same when petitioned so to do, in the manner hereinafter specified;* and the superintendent shall make a record showing the boundaries and numbers of all the districts in his county so established and organized. The county

judge shall be ex-officio chairman of said board, and the superintendent ex-officio secretary; except, where the board of county commissioners is a separate body, the chairman of the board shall be chairman. The superintendent and two members of the county board shall constitute a quorum for the transaction of business." (Italics ours.)

Section 111-803, OCLA, so far as material to the matters now before the court, provides:

"* * * The district boundary board *may* establish new districts on petition of three legal voters of said proposed new district *and may*, upon petition of three or more legal voters interested, *change, divide or abolish the districts of its county.* * * * Before any new district shall be established, or change shall be made in the boundaries of any existing district, the superintendent shall cause to be posted in three public and conspicuous places in such proposed district, or in each of the existing districts, at least 10 days before action is taken as herein provided, written or printed notices of the boundaries of the proposed new district, or the changes to be made in the boundaries of any existing district, and of the session of the board when the same will be done. No district shall be organized unless it contains at least twenty children of school age, and no district shall continue to be a legally organized district unless it has at least six children of school age. When changes are made in the district boundaries, as hereinbefore set forth, or when any district shall be divided into two or more parts for school purposes, the existing board of directors shall continue to act for both, or all the new districts or parts of districts, until such districts or parts of districts shall have been regularly organized, by the election of directors and clerks, as provided by law. The district boundary board may, when petitioned to do so, annex a district or parts of a district to one or more adjoining districts so that the district so annexed or divided will be abolished. * * * The

district boundary board shall have no power to annex a school district having ten or more children of school age to one or more adjoining districts without submitting the question to the voters of such districts in the manner provided for consolidating school districts as described by section 111-831.'' (Italics ours.)

■ ■ The formation, dissolution, and change in boundaries of school districts are legislative matters. School districts may be abolished or dissolved at the will of the legislature, subject, of course, to constitutional limitations, if any. It is not necessary that the districts affected give their consent to such action, except as otherwise provided by statute. A change of boundaries of school districts may occur in a variety of instances, as in the case of consolidation of districts, division to create new districts, taking from one district and adding to another, cutting off a part of a district, annexing unorganized territory to a district, etc. In 47 Am Jur, Schools, 310, § 18, it is stated:

'' * * * The legislature has full power to change boundaries of districts without the consent of the districts affected, except so far as it may be limited by the state constitution.

''Whatever the nature of the change, it is settled that *the boundaries of school districts may be changed at the will of the legislature.* In the exercise of its power, the legislature may act directly, or it may delegate its power to subordinate authorities without violating the general rule against the delegation of legislative power. For example, the power to change boundaries may be conferred by the legislature on administrative agencies * * * or county boards or officers, or upon a state superintendent of schools. But the authorities are in conflict as to whether power to change the boundaries of school districts may be validly delegated to a court.'' (Italics ours.)

██ By virtue of the hereinabove-quoted statutes of this state, the legislature has delegated its power to form and abolish school districts, and to change the boundaries thereof, to the District Boundary Board. It has prescribed the procedure to be followed with relation to the changing of school district boundaries. § 111-803, OCLA. By the express terms of this statute, the question of whether or not a petition for a change in boundaries shall be granted is left to the sound discretion of the District Boundary Board. No provision is made for remonstrances against the proposed change, as is the case under some statutes involving public matters, nor are any standards fixed for guidance of the District Boundary Board in making its determination. In fact, no direct provision is made for a hearing before the Board. However, inasmuch as the law requires the posting of notices, it may be implied therefrom that the legislature intended a hearing should be held; and that persons opposed to any proposed change might have the right to remonstrate and to present evidence in opposition; and that the Board, in determining the question, should give consideration to the entire record. If this were not the intent of the legislature, then the posting of notices would serve no purpose whatever. No appeal from the decision of the District Boundary Board granting a petition for a change of boundaries of a school district is provided for, and hence, its action in that regard is final.

In *School District v. Irwin*, 34 Or 431, 435, 46 P 413, this court, speaking through the late Chief Justice WOLVERTON, said:

"The principle is well settled that, where a particular jurisdiction is conferred upon an inferior court or tribunal, its decision will be final, unless provision is made by statute for an appeal * * *.

\* \* \*. Such being the rule pertaining to inferior tribunals invested with judicial cognizance, it applies with equal or greater cogency to officers and boards whose functions are ministerial, or *quasi* judicial only, in their character.''

■ In holding a hearing and making a final determination upon the question of a change in boundaries, the District Boundary Boards acts in a quasi-judicial capacity. Its acts in this respect are more than ministerial. The meaning of ''quasi judicial'' is well explained in 50 CJS, Judicial, 562, as follows:

''\* \* \* In a general sense it is used to indicate an exercise of judgment or discretion, or a choice of alternatives; and is particularly applied to acts, duties, or functions which require the exercise of discretion or judgment by officers or agencies other than those which strictly constitute a part of the judiciary, and specifically those officers or agencies which constitute the administrative or executive branch of the government. \* \* \* the more accurate term 'quasi judicial' is employed to describe governmental officers, boards, or agencies which, while not a part of the judiciary, exercise functions of a judicial nature; and so, where a nonjudicial officer has the authority to hear and determine the rights of persons or property, or the propriety of doing an act, or where a power vests in a judgment or discretion, so that it is of a judicial character or nature, but does not involve the exercise of the functions of a judge, or where it is conferred on an officer having no authority of a judicial character, the expression used is generally 'quasi judicial.' ''

■ The writ of review in this state is substantially the common-law writ of certiorari and is subject to the same construction and application. *Hall v. Dunn,* 52 Or 475, 97 P 811, 25 LRA NS 193; *Dayton v. Board of Equalization,* 33 Or 131, 136, 50 P 1009; *Schirott v. Phillippi,* 3 Or 484; § 11-201, OCLA.

■ ■ The writ is allowed in all cases where the inferior court, officer, or tribunal in the exercise of judicial functions appears to have exercised such functions erroneously, or to have exceeded its or his jurisdiction, to the injury of some substantial right of the plaintiff, and not otherwise. § 11-204, OCLA. The proceedings of a District Boundary Board relating to a change in boundaries of a school district may, in a proper case, be reviewed on a writ of review. *Nicklaus v. Goodspeed,* 56 Or 184, 108 P 135.

■ Though by virtue of the provisions of § 11-204, OCLA, the writ shall be concurrent with the right of appeal, nevertheless, it does not give the remedy the effect of an appeal. It does not lie to correct mere errors in the exercise of rightful jurisdiction, or to inquire whether the rulings of an inferior tribunal upon the law and the evidence, and in the application of the law to the facts, are correct. It is expressly limited to two classes of cases: first, whenever the inferior court or tribunal has exceeded its jurisdiction; and, second, whenever it has exercised its judicial functions erroneously; that is, illegally and contrary to the course of procedure applicable to the matter before it. *Bechtold et al. v. Wilson et al.,* 182 Or. 360, 378, 186 P2d 525, 187 P2d 675; *Lechleidner v. Carson,* 156 Or 636, 644, 68 P2d 482; *Garnsey v. County Court,* 33 Or 201, 206, 54 P 539, 1089; 14 CJS, Certiorari, 129, § 8.

In *Cookinham v. Lewis,* 58 Or. 484, 488, 114 P 88, 115 P 342, this court said:

"* * * Therefore, the writ will only bring up the record, upon which the case will be reviewed as to questions of jurisdiction and errors in the proceeding. It will not review questions of fact, and has nothing to do with the evidence."

See also 14 CJS, Certiorari, 311, § 172.

 In order to determine the propriety of issuing a writ of review, recourse must be had to the petition therefor. The petition must state every fact bearing upon the errors claimed, so that from an inspection thereof, assuming the facts stated to be true, the court can say there has been error upon which to issue the writ. *Raper v. Dunn*, 53 Or 203, 99 P 889. If the petition fails to state facts sufficient to authorize the issuance of the writ, such defect is jurisdictional; and even though a return to the writ is filed and the matter is contested on its merits, the jurisdictional question remains. *Bechtold et al. v. Wilson et al.*, supra.

It must be kept in mind that a proceeding by writ of review is a special proceeding, and the scope of the inquiry permitted therein is limited as above stated.

We have already observed that jurisdiction to change the boundaries of a school district is vested in the District Boundary Board. To invoke that jurisdiction, a petition must be filed by three or more interested legal voters. It is then required that written or printed notices shall be posted in three public and conspicuous places in each of the existing districts involved, at least ten days before action is taken upon the petition, which notices shall describe the changes to be made in the boundaries of any existing district and state the time of the session of the board when the change will be made. We have held that the holding of a hearing at the time stated is required. These are the only jurisdictional requirements.

An inspection of the petition for writ discloses that the necessary petition for change of boundaries was filed; that notices were posted as required by the statute; and that a hearing was held. Therefore, upon the face of the petition it is made to appear that the District Boundary Board had jurisdiction to order the

change proposed. The petition wholly fails to state facts showing that the Board exceeded its jurisdiction or exercised its functions erroneously. Most of the petition is devoted to a statement of the arguments presented for and against the change. True, it is alleged that the action of the Board is contrary to law, arbitrary, unreasonable, and an abuse of discretion, but these are mere conclusions. The allegation that the Board exceeded its jurisdiction and legal authority and exercised its functions erroneously, as specifically set forth in paragraph XIII of the petition, is not supported by any other allegation in the pleading; in fact, it is a conclusion in direct conflict with the material allegations of the petition.

■ Upon our consideration of this matter, we are not permitted to substitute our judgment as to the validity of the arguments of either side to the controversy, as made at the hearing, for that of the District Boundary Board; no more so than we would be permitted to consider and pass upon evidence, had any been presented. Arguments for and against the proposed change were exclusively for consideration by the Board, and its action thereon cannot be reviewed in this proceeding.

It is argued that where the record shows the action of the District Boundary Board to have been arbitrary and unreasonable, relief may be obtained by writ of review, and our attention is invited to the decision of this court in *Nicklaus v. Goodspeed,* supra. In that case it appeared from the record that the granting of the petition for a change in boundaries, in effect, would abolish or destroy the school district. The court pointed out that the Board had no power to abolish or destroy a district, and said, ''where such power is not granted it does not exist'', and further that ''what the board

cannot do directly, it cannot do indirectly.'' It is obvious that in that case the Boundary Board exceeded its jurisdiction, and a writ of review was a proper remedy to correct the error. However, the court did, at page 188, make the following statement:

> "* * * Some emphasis is laid on the word 'discretion,' as used in the statute in connection with the powers granted the board, but discretion and arbitrary power are far from being synonymous terms. 'Discretion,' when vested in an officer, however, does not mean absolute or arbitrary power. The discretion must be exercised in a reasonable manner, and not maliciously, wantonly, and arbitrarily, to the wrong and injury of another.''

By later amendments to the statute, the word ''discretion'' was omitted therefrom, and for it was substituted the word ''may'', as now appears therein. Although the words used are different, the meaning is the same, for the word ''may'' imports discretion. In the statute vesting in the Boundary Board a discretion in the matter of changing boundaries of a school district, there is implied a requirement that such discretion be exercised reasonably, and not arbitrarily or capriciously. In 47 Am Jur, Schools, 311, § 19, the rule is stated thus:

> "* * * * * *

> "Discretion being exercisable, certain limitations are, of course, imposed. Thus, the authority must act in good faith for the best interests of the people of the districts affected, upon just and equitable terms which do not cause unnecessary hardship. Express statutory directions or limitations must be followed, and discretionary action must not be based on an erroneous theory of the law, or arbitrary, or fraudulent, or so grossly unjust as to constitute an abuse. Such limitations being com-

plied with, however, the discretionary decision is final and not subject to interference by the courts."

See also 14 CJS, Certiorari, 174, § 30.

■ But under the rules heretofore stated, we cannot, in a proceeding by writ of review, consider and weigh the evidence or the arguments for and against the change, in determining the question of whether or not the District Boundary Board abused its discretion. The presumption is that it did not. § 2-407 (15), (17), OCLA.

Plaintiffs also invite attention to the case of *Merrit School Dist. No. 50 v. Kimm,* 22 Wash2d 887, 157 P2d 989, as authority for the proposition that an officer or board vested with discretionary power to change school district boundaries must not act arbitrarily or capriciously. In that case there was in question an order of the county school superintendent, consolidating school districts. The matter was before the trial court upon an appeal from the decision of the school superintendent. The use of a writ of review was not involved. The case, therefore, is not in point upon the issue now before this court; viz., whether the relief plaintiffs demand is obtainable by writ of review.

What is said with respect to this Washington decision is true also of the other authorities cited by plaintiffs: *Bledsoe v. McKeowen,* 181 Ark 584, 26 SW2d 900; *Fisher v. Birkey,* 299 Ill 145, 132 NE 498; *Fisher v. Birkey,* 307 Ill 625, 139 NE 126; *Patillo v. County School Trustees of Wilson County* (Texas Civ. App.), 235 SW2d 924.

In passing, it might be noted that subsequent to the decision of this court in *Nicklaus v. Goodspeed,* supra, the legislature amended § 5147, Oregon Laws, (now § 111-803, OCLA) by adding thereto the following provision: "The district boundary board may, when

petitioned to do so, annex a district or parts of a district to one or more adjoining districts so that the district so annexed or divided will be abolished.'' Ch. 266, Oregon Laws 1921. The District Boundary Board is, therefore, now vested with a power it did not enjoy at the time the decision was handed down in *Nicklaus v. Goodspeed,* supra, the lack of which power formed the gist of the court's conclusions in that case.

The petition in this case does not state facts sufficient to authorize the issuance of the writ. Conclusions have been substituted for facts. In similar circumstances this court, speaking through Mr. Justice LUSK in *Bechtold et al. v. Wilson et al.,* supra, at page 380, said:

"* * * Instead of moving to quash the writ, which would have been the proper way to question the sufficiency of the petition * * * the respondents appear to have contested the matter on its merits. The defect, however, was jurisdictional, and the parties could not, by their conduct, confer jurisdiction * * *.''

The trial court entered judgment dismissing the writ. Though this judgment was based upon a consideration of the matter upon its merits, rather than upon the jurisdictional question involved, nevertheless, it was a proper judgment.

Judgment affirmed.