Argued October 28, reversed and remanded December 18, 1963

# SCHOOL DISTRICT NO. 7 OF WALLOWA COUNTY ET AL *v.* WEISSENFLUH ET AL
## and
# SCHOOL DISTRICT NO. 7 OF WALLOWA COUNTY ET AL *v.* MINKLER ET AL

387 P. 2d 567

*M. Keith Wilson,* Enterprise, argued the cause and submitted a brief for appellants.

*Charles R. Cater,* La Grande, argued the cause and submitted a brief for respondents.

Cecil H. Quesseth, Special Assistant Attorney General, Salem, submitted a brief amicus curiae on behalf of the State Board of Education in support of appellant's position. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before McAllister, Chief Justice, and Rossman, Perry, O'Connell, Goodwin, Denecke and Lusk, Justices.

O'CONNELL, J.

This is an appeal from a decree of the circuit court of Wallowa county declaring invalid the action of the defendant District Boundary Board in making changes in the boundaries between three school districts.

The requests for the boundary changes were made in two petitions filed with the defendant boundary board, in each case by three legal voters of the proposed new districts in accordance with ORS 329.730, which provides in part as follows:

"(1) The district boundary board may establish new districts on petition of three legal voters of a proposed new district if it finds that a new district is necessary for the proper instruction of children living in the area of the proposed new district.

"(2) Upon petition of at least three interested legal voters, the boundary board may change, divide or abolish the districts of its county if it finds:

"(a) The proposed change will have no substantial adverse effect upon the ability of the districts affected to provide the educational program required by law.

"(b) The proposed change will result in improvement of the educational facilities available to the children in the area transferred or in the area comprising a newly created district or in areas of districts being abolished and attached to existing or newly created districts or will result in substantial operating economies in the districts affected.

"(c) The proposed change, division, or abolition of a district is not made solely for tax advantages to the property owners in the district or area to be changed, divided or abolished."

The changes requested in the petitions were made by the boundary board after giving notice as required by ORS 329.730 (4),[①] and after holding a hearing upon the proposed changes. The minutes of the board show that the chairman of the board reviewed the requirements which govern the boundary board when acting upon a petition for annexation, after which members of the audience were invited to express their support or opposition. Both points of view were expressed and were recorded in the board's minutes. The minutes also reported the action of the board in passing upon the two petitions. The action on both petitions was reported in substantially the same manner. The minutes report the action on one of the petitions as follows:

"Motion made by Dr. James Coffman, seconded by C. Raymond Johnson that the petition from the residents of School District #7 (Lostine) petitioning for annexation to School District #12 (Wallowa) be granted on the basis that paragraphs (a), (b) and (c) of sub-section (2) ORS 329.720 had been fully discussed by the Boundary Board and the granting of the petition would not be contrary to the Oregon Revised Statutes, and the requirements of the above mentioned paragraphs could all be answered in favor of the petition.

"A roll call vote was called for. The following is a result of this vote. * * * [indicating the yeas and nays]

---

[①] ORS 329.730 (4) provides as follows:

"(4) Before any new district is established or change made in the boundaries of any existing district, the district boundary board shall cause notice to be given in the manner described in ORS 331.010 for school district meetings in the proposed district, or as provided in ORS 331.010 in each of the existing affected districts. The notice shall show the boundaries of the proposed new district or the changes to be made in the boundaries of any existing district, and the session of the board when the same will be done."

"This motion carried. The secretary was instructed to so notify the districts involved."[9]

The trial court held that the board "did not make the findings of fact contemplated and required by statute as the basis for its action, and that, therefore, the said Boundary Board did not have jurisdiction to change the boundaries" of the designated school districts.

■ We do not construe ORS 329.730 as requiring the boundary board to recite findings of fact based upon evidence of record. It is true that the statute authorizes the board to make boundary changes only "if it finds" the prescribed conditions. But this is merely a statement of the standards circumscribing the board's authority. ORS 329.730 is silent as to the character of hearing procedure preliminary to a boundary board's final action in changing district boundaries. However, in *School District No. 68 v. Hoskins,* 194 Or 301, 312–313, 240 P2d 949 (1952), it was held that "inasmuch as the law requires the posting of notices, it may be implied therefrom that the legislature intended a hearing should be held." The type of hearing intended was not specifically described. However, the court did say that the purpose of the meeting was to make it possible for persons opposed to any proposed change "to remonstrate and to present evidence in opposition," and that "the Board, in determining the question, should give consideration to the entire record." It was said that the board acted in a "quasi-judicial" capacity. In spite of the reference to the right "to present evidence" and to the board's "quasi-judicial" function and its duty to "give consideration to the entire record," it seems

---

[9] It is patent that the reference to ORS 329.720 was an inadvertence and that ORS 329.730 was intended.

clear that the court did not treat the statute as requiring an adversary hearing at which testimony would be taken and recorded and from which formal findings of fact would be made.[9] The court held that there was no appeal from the decision of the board and that the remedy by way of writ of review, although appropriate to attack the board's jurisdiction and the illegality of its procedure, would "not lie to correct mere errors in the exercise of rightful jurisdiction, or to inquire whether the rulings of an inferior tribunal upon the law and the evidence, and in the application of the law to the facts, are correct." (194 Or at 314). Thus in referring to the board's quasi-judicial function, it does not appear that the court intended to describe the board as a judicial tribunal but simply intended to describe the exercise of judgment or discretion which is equally necessary in the exercise of either the judicial or legislative function.

■ Since the statute is silent as to the type of hearing intended and the Administrative Procedure Act (ORS 183.010 to 183.510) is not applicable, we must derive the legislative purpose through other sources.[4]

---

[9] It is to be noted that at the time the *Hoskins* case was decided the statute did not contain the requirement that the board find the prescribed conditions set out in ORS 329.730 (2) (a), (b) and (c). But considering the rationale of the case, it is fair to assume that the court would not have required a different type of hearing if the statute at that time had set forth the prescribed conditions.

[4] The rural school board is not an agency as defined in ORS 183.310 (1):

"(1) 'Agency' means any state board, commission, department, or division thereof, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative and judicial branches, and except the State Board of Parole and Probation, the Public Utility Commissioner, the State Tax Commission, the Civil Service Commission, Department of Finance and Administration, Department of Motor Vehicles, and the State Industrial Accident Commission."

The choice is between a trial type of hearing and a speech making type hearing.[5]

■ The important inquiry in making the choice between the two types of hearing is whether an adversary hearing procedure is constitutionally necessary and if not, whether the legislature nevertheless deemed it desirable in the particular area of regulation.[6] Certainly an adversary hearing in proceedings to fix school district boundaries is not necessary in the sense that it is required to satisfy procedural due process under either the United States or the Oregon Constitutions. Generally it is said that such a hearing is not necessary because an alteration of school district boundaries is a legislative decision. Typical is the statement in *Zilisch v. Auer,* 197 Wis 284, 294, 221 NW 860 (1928):

> "Whether the boundaries of a local governmental unit like a city or a school district should be changed 'is not a question of law or fact for judicial determination, but purely a question of policy, to be determined by the legislative department.' * * * The policy outlined in sec. 40.85 of the Statutes presents a question of political expediency for the legislative department of our government."

Other cases, including our own, have expressed a similar idea.[7]

---

[5] Fuchs, Procedure in Administrative Rule-Making, 52 Harv L Rev 259 (1938), refers to the former as "adversary procedure" and the latter as "auditive procedure."

[6] Ibid.

[7] Stanbery v. Smith, 75 Or Adv Sh 653, 377 P2d 8 (1962); Vestal v. Pickering, 125 Or 553, 267 P 821 (1928); Hammond Lumber Co. v. Board of Supervisors, 85 Cal App2d 568, 193 P2d 503 (1948); State ex rel Resenstahl v. Storey, 144 Kan 311, 58 P2d 1051 (1936); Musick v. State ex rel Miles, 185 Okla 140, 90 P2d 631 (1938); School District No. 3 of Adams v. Callahan, 237 Wis 560, 297 NW 407, 135 ALR 1081 (1941).

Whether the board's action is denominated as legislative or judicial is, however, unimportant and the attempt to make the distinction is perhaps fruitless. Davis, after setting forth a number of attempts to define legislative and adjudicative functions, notes that each lacks precision in some respect.[8] He concludes that:

"These various difficulties are avoided by saying simply that adjudication resembles what courts do in deciding cases, and that rule making resembles what legislatures do in enacting statutes. Then particular problems of classification can be resolved by keeping an eye on the consequences of the particular classification."

■ It is true that the board's action in altering school district boundaries may affect a citizen in a variety of ways; in the amount of taxes he will have to pay, the distance his children will have to travel to school, the quality of instruction his children will receive, and other consequences. But residents and taxpayers do not have any personal or property rights in a particular school district boundary arrangement which are entitled to be asserted in an adversary proceeding in frustration of the board's effort to carry out its policy-making function.[9]

■ The failure of the legislature to provide in the

_____

[8] 1 Davis, Administrative Law Treatise § 5.01, pp. 287–288 (1958).

[9] School District No. 3 of Adams v. Callahan, supra; Zawerschnik v. Joint County School Committee, 271 Wis 416, 73 NW2d 566 (1955).

It has been held that the state may modify or abrogate any powers granted to school districts and that such districts may be abolished without the consent of the residents thereof or altered without provision or adjustment of indebtedness or equities between the districts. County School Board v. School Board of Covington, 197 Va 845, 91 SE2d 654 (1956).

statute for a hearing suggests that the legislature did not feel that it was necessary for the delegated power to be exercised in a judicial manner. The inference becomes even stronger when the traditional legislative function is delegated to a regulatory body made up of elected representatives of the people, as is the school district boundary board.[10]

■ In the present case the board's minutes disclosed the basis upon which it proceeded in making the boundary change. It was not necessary to record any more specifically the facts which it considered in arriving at its conclusion.[11] If the board acts capriciously or beyond the delegated power, its action may be attacked in a proper proceeding.[12]

The decree of the lower court is reversed and the cause is remanded with directions to dismiss the petitions for writ of review.

---

[10] "* * * A legislature is a representative body whose members are supposed to and to a large extent do reflect the will of their constituents. Those affected by a pending measure are not denied opportunity for participation in the determination, for they are presumably represented within the legislature itself. * * *

"Like a legislature, a municipal government, by reason of its representative character, may sometimes act without providing opportunity for party participation even though an administrative body might be required for the same action to provide such opportunity." 1 Davis, Administrative Law Treatise § 6.05, p. 376 (1958).

[11] The cases which follow stand for the general proposition that in proceedings for the alteration or reorganization of school districts affirmative findings of fact are not necessary to support the governing body's determination. People ex rel Harty v. Gully, 2 Ill App2d 321, 119 NE2d 540 (1954); State ex rel Reorganized School District v. Robinson, 276 SW2d 235 (Mo 1955); School District No. 49 v. School District No. 65-R, 159 Neb 262, 66 NW2d 561 (1954); Anderson v. Peterson, 78 N D 949, 54 NW2d 542 (1952); Town of Thornapple v. Callahan, 244 Wis 266, 12 NW2d 23 (1943).

[12] School District No. 68 v. Hoskins, 194 Or 301, 240 P2d 949 (1952); School District No. 1, Multnomah County v. School District No. 45, Multnomah County, 148 Or 554, 37 P2d 873 (1934); State ex rel School District No. 25 v. Evans, 82 Or 46, 160 P 140 (1916).