B. VON W. NAPIER, ELSIE V. NAPIER, LOUISE
A. SCHNEIDER, K. C. STEVENS, MILO C. MAT-
THEWS, JACK WOLCOTT, MARY M. WOLCOTT,
PHYLLIS M. CORRON, CLIFFORD PAUL WIN-
TER, CHARLES HART and DAISY E. WINTER,
*Plaintiffs*; DEPARTMENT OF REVENUE, STATE
OF OREGON, *Intervenor, v.* LINCOLN COUNTY
SCHOOL DISTRICT, *Defendant.*

222

Carl N. Byers, Heltzel and Byers, Salem, represented the plaintiffs.

Ira W. Jones, Assistant Attorney General, Department of Revenue, Salem, represented the intervenor.

Cecil H. Quesseth, Salem, and Rodney P. Everhart, Toledo, represented defendant.

Decision for defendant rendered December 3, 1970.

CARLISLE B. ROBERTS, Judge.

This suit was brought by 11 individuals, as "interested taxpayers" pursuant to ORS 294.485, under the Local Budget Law, seeking revision of the 1970-1971 budget of the Lincoln County School District, or revision or voidance of the tax levy made thereunder. The Department of Revenue, State of Oregon, being charged by the Local Budget Law with supervision over tax budgets and levies, intervened. Four issues were presented to the court.

I

Were the plaintiffs "interested taxpayers" within the provisions of subsection (2) of ORS 294.485?

ORS 294.305 to 294.520 is known as the Local Budget Law. These sections specify the methods and procedures to be followed by a municipal corporation (including a school district) in the preparation of the budget which will determine the tax levy for the ensuing fiscal year. ORS 294.485 provides in part:

"(1) Any tax levy made contrary to the provisions of ORS 294.304 to 294.520 or any other law relating to the making of tax levies shall be voidable as provided in subsection (2) of this section and ORS 310.070.

"(2) The county assessor, county court, board of county commissioners, the Department of Revenue, Tax Supervising and Conservation Commis-

sion or 10 interested taxpayers may appeal to the Oregon Tax Court and such appeal shall be perfected in the following manner only:

"(a) Within 20 days after the notice of tax levy is filed with the county assessor, the appealing party shall file an original and two certified copies of a complaint with the clerk of the Oregon Tax Court at its principal office in the state capital, Salem, Oregon. * * *"

Eleven individuals were named as plaintiffs in this cause and the complaint alleges that they "are all taxpayers and registered voters of Lincoln County, Oregon, and are interested taxpayers within the meaning of ORS 294.485." A motion of the defendant to quash service because of failure of parties plaintiff was overruled by the court and the issue was again raised in defendant's answer. It was proved that all the parties plaintiff resided in taxable residential property within the boundaries of the defendant's taxing district. Two of the parties were purchasing their residential property under contract and had only an equitable interest therein. Several of the parties had failed during one or both of the last two years to pay the taxes imposed on their property. The defendant argued that "taxpayer" must mean a person who has legal title to property in the taxing district and on which property he regularly pays taxes. Abstracts in cases under the heading "Taxpayer," found in 41 Words and Phrases 336 et seq., support this conclusion. Other abstracts from the same source indicate that the meaning of "taxpayer" may be greatly varied, depending upon its context in the statute.

■ The words "10 interested taxpayers," found in ORS 294.485 (2) apparently have not been judicially construed in Oregon. There can be no doubt that an

"interested taxpayer," at the very least, must be a person claiming rights to real or personal property within the jurisdiction of the taxing district in which the issue is raised, and such property is subject to tax by the district.

In the case of real property, taxes "run with the land"; no individual or corporation is personally liable therefor. Real property may even be assessed lawfully to unknown owners. ORS 308.240. The recording of deeds and filing of contracts of sale of land are not required by law; in fact, the statute sanctions secrecy where a grantor sells part of a tract and desires a division of assessment. ORS 311.280. This same statute authorizes payment of taxes by the holder of an unrecorded contract of sale or mortgage. These laws and the customs resulting therefrom render difficult a determination, in particular instances, as to who is the taxpayer.

There can be no doubt that thousands of equitable owners of real property, under contracts of purchase, are regularly billed in Oregon for property taxes, year after year, and regard themselves as "taxpayers." (Mrs. Eleanor Dick, for many years Chief Deputy Tax Collector for Lincoln County, at the hearing on the motion to quash, testified that tax statements are frequently sent to the individuals named as purchasers on contracts.) Equitable owners lawfully deduct such tax payments for income tax purposes. *Ernst Kern Co.*, 1 TC 249 (1942). There can be no doubt that an equitable owner is often more keenly interested in tax administration than the legal owner may be, if the latter's security is not threatened.

██ A valid argument can be made that "the legal estate alone is the subject of taxation." *Nehalem Tim-*

*ber Co. v. Columbia Co.*, 97 Or 100, 107, 189 P 212; 190 P 318 (1920). Such argument is not applicable or necessary to the construction of "interested taxpayer" under ORS 294.485. That statute is a remedial measure, to be liberally construed. *Columbia River Packers v. Appling*, 232 Or 230, 235; 375 P2d 71 (1952). The policing of the Local Budget Law was deemed so important to the legislative drafters that a substantial list of officers was set out as possible plaintiffs, as well as the group of "10 interested taxpayers." The latter category should not be grossly restricted to legal owners, since the language used does not compel such a limitation and the legislative purpose in enacting the statute is as well served by equitable owners as by legal owners. It is concluded that an equitable owner of real property subject to local taxation is an "interested taxpayer" for the purposes of ORS 294.485 (2).

■ It is also concluded that a "taxpayer," whether holding legal or equitable title to real property, does not lose that status by reason of real property tax delinquency. As stated above, he has no personal liability as a taxpayer. A lien for real property tax arises on July 1 of the year for which the taxes are levied. ORS 311.405. Taxes on real property not paid by August 15 of the year following are delinquent. ORS 311.510. Foreclosure of the lien can only begin when three years have elapsed from the earliest date of delinquency. ORS 312.010. The status of "taxpayer" can be deemed to end at the time of judgment and decree upon the foreclosure. ORS 312.110. (See *Pope & Talbot, Inc. v. State Tax Com.*, 216 Or 605, 613, 340 P2d 960 (1959), where the court construed the word "taxpayer," found in ORS 321.225 and held that

there the word was intended to refer to all persons coming within the provisions of the act whether their taxes were paid or not.)

## II

Is the plaintiffs' complaint in its second cause of action, relating to the legality of the Bus and Bus Equipment Fund, barred by the doctrine of laches?

Plaintiffs pleaded that the "defendant has created a reserve bus fund for contingencies, without a tax base and without submitting the question to a vote of the electors, in the amount of $227,952.48, all of which is contrary to the provisions and requirements of ORS 280.100 and 280.050."

The defendant answers that the special reserve fund designated Bus and Bus Equipment Fund was established by resolution on January 10, 1967, and duly listed in the school budgets in subsequent fiscal years, and that interested persons had opportunity to examine the school budgets and the school records and minutes and no objections to the creation of the fund or to the continuation thereof was made prior to the institution of this suit. Defendant alleges that the plaintiffs have been guilty of laches and an unreasonable delay in bringing this action and pray that plaintiffs' complaint with respect thereto be dismissed.

The defendant has called attention to an annotation in 71 ALR2d 529 entitled "What constitutes laches barring right to relief in taxpayers' action. A summary is found on page 532:

"As will be seen by a perusal of the subsequent sections of this annotation, the rules under which it is determined whether the conduct of complainants in actions generally has been such as to con-

stitute laches barring their right to relief are applicable in most instances to taxpayers' actions, the main factors being: (1) the length of time, or alleged delay, on the part of the taxpayer in pressing his claim; (2) his knowledge or notice, or lack of knowledge or notice, of the facts, and (3) possible resulting prejudice to other parties if his action is not barred."

■ The preparation of a municipal budget is an annual requirement. Information as to prior budgets has evidential value but the budget for each year is unique. See ORS 294.305 to 294.520. The Local Budget Law itself, in ORS 294.485, stipulates a limitation in time in which an appeal can be brought to the Tax Court to void a budget in whole or in part. Such appeal must be brought "within 20 days after the notice of tax levy is filed with the county assessor." This requirement the taxpayers have met. The plaintiffs cannot be barred from relief on the ground of laches.

### III

Did the 1970-1971 budget of the defendant comply with the requirements of the Local Budget Law with respect to the estimate of budget resources as prescribed by ORS 294.361 and 294.381?

■■■ ORS 294.361 requires each municipal corporation to estimate in detail its "budget resources" for the ensuing year by funds and sources. "Budget resources" means resources to which recourse can be had to meet obligations and expenditures during the fiscal year covered by the budget. ORS 294.311 (6). ORS 294.361 (2) further expands upon the definition of budget resources, showing a legislative intent to include revenues from any and all sources of whatsoever kind or character so far as possible. ORS

294.381 makes clear the legislative intent that the municipal corporation shall levy taxes only to the extent necessary to balance the budget requirements after taking into account all other budget resources.

The plaintiffs have pleaded that an audit of the Lincoln County School District records reveals that the district, at the time of determining the estimated tax levy, had time certificates of deposit with various banks in the amount of $1,844,028.06, but the total estimate of budget resources shown by the budget of the defendant and used in computing the tax levy was only $450,000. Plaintiffs conclude that the defendant school district unlawfully failed to show the proper beginning fund balance or cash on hand in its budget for the fiscal year beginning July 1, 1970.

■ The evidence presented at the time of trial showed that the Lincoln County School District, during the last 15 years or more, has been using a hybrid method of accounting under which expenditures or liabilities are recorded on the accrual basis of accounting (at the time legal liability for the expenditure comes into existence) while the revenue of the district is shown on the cash basis (that is, only at the time of actual, rather than anticipated, receipt of the revenue). Such method of accounting is specifically authorized by ORS 294.445:

"(1) A municipal corporation shall record its revenues and expenditures according to either the accrual basis of accounting, the cash basis of accounting or a combination of cash and accrual basis of accounting.

"(2) The selection of the method of accounting is left to the discretion of each municipal corporation in the first year following September 2, 1963 [the time of adoption of the revised Local Budget Law]. * * *"

Under this hybrid method of accounting, salaries and other expenses which had been incurred by the district prior to June 30, 1970, but which remained unpaid on June 30, 1970, were charged against the budget appropriations for the period ending June 30, 1970. This method of accounting reduces substantially the ending fund balance that is available in the succeeding fiscal year in comparison to the amount of cash and investments on deposit in a bank or on hand at the end of the fiscal year. Mr. Donald J. Connelly, a certified public accountant whose firm has audited the Lincoln County School District records for a number of years, testified that the total assets in the General Fund as of June 30, 1970, amounted to $2,574,541, but this included inventory items in the amount of $1,055,000 unavailable for payment of accounts, leaving a balance of $1,519,541. As of the date mentioned, there were accounts payable of $275,434, accrued payrolls of $483,257.40, and accrued payroll taxes and withholdings of $211,222.01, for a total of $969,913.41. On the basis of this calculation, it would appear that there remained budget resources in the form of cash in the sum of $548,637.59 instead of the $450,000 projected in the budget. The undisputed testimony before the court showed clearly that in this case, as is generally true in budget projections, the estimate of $450,000 was made in the period of December 1969-January 1970, in anticipation of the new fiscal year beginning July 1, 1970. Mr. Donald Streun, the business manager of the Lincoln County School District, testified that one of the problems in making estimates five to six months in advance grew out of the fact that some of the items of expected revenue to be considered were erratic. The witness made particular reference to income to be derived from

federal and state forest sales, which could easily vary $100,000 in a given year. This was the case in 1970.

Once the defendant's method of accounting, the problems inherent in forecasting revenues which are subject to gross variations, and the scope of the description of budget resources are clearly understood, the evidence suggesting that the defendant has failed to utilize budget resources fully for the purposes of the 1970-1971 budget is overcome. The difference between the amount of investments shown in the audited report, as alleged in plaintiffs' complaint, and the amount of estimated beginning cash balance shown in the budget, Exhibit 10, page 2, is adequately explained. As suggested by the intervenor, it is possible that the issue would not have been raised if the district had described the $450,000 as "net working capital" rather than as "available cash on hand."

Following the direct examination of Mr. Streun, the defendant moved to dismiss the first cause of action of the plaintiffs on the ground and for the reason that there had been insufficient evidence submitted to support the allegations and charges of the first cause of action. The court, having weighed the evidence, finds the motion well founded. Plaintiffs have failed to sustain the burden of proof on the first cause of action and take nothing thereby.

## IV

Was the Bus and Bus Equipment Fund, listed in the defendant's 1970-1971 budget, page 15 (plaintiffs' Exhibit 10), lawfully established?

In the past, the school district had owned, maintained and operated its own fleet of school buses. In 1966, it sold its buses to Transportation Equipment

Rentals, Inc., with headquarters in Portland, Oregon, a corporation wholly owned by Consolidated Freightways. On November 30, 1966, the defendant school district entered into a written agreement (defendant's Exhibit B) with Transportation Equipment Rentals to lease back the buses sold to the lessor, and any replacements thereof and additions thereto. The lease agreement is a continuing one, with provisions for termination by either side after specific notice. Upon termination by either party, the school district agrees to buy the buses covered by the agreement. If the district fails to pay the purchase price provided in the agreement, the lessor may sell the vehicles at public or private sale and hold the school district liable for any difference between the net amount realized on the sale and the purchase price established in the lease agreement. This lease agreement was in effect at the time of trial.

The official minutes of the defendant school district for the regular meeting of January 10, 1967, (defendant's Exhibit A) quote a letter which had been received from the firm of certified public accountants which has audited the school district's financial records for a number of years, as follows:

"You ask whether we foresee any budget or legal problems if funds received for the sale of the transportation fleet of the School District are placed in a separate fund. It is our understanding that use of this fund would be restricted to purchase of transportation equipment.

"ORS 280.010 to 280.990 provides the purposes and methods of establishing a financial reserve or special fund. It appears that this authority would apply to the situation at hand, and that the Board of Directors could establish such a fund by Board resolution.

"It is our understanding that the moneys received from the sale of your equipment should be deposited in the General Fund and then transferred from the General Fund to the Special Reserve Fund by Board action.

"These funds would, of course, have to be reflected in the budget each year, and must be appropriated before expenditures could be made therefrom."

The minutes indicate the approval by the board's legal counsel of the foregoing and of a proposed resolution, and then recite that the board of directors of the school district, by vote of four to one, adopted the following resolution:

"WHEREAS, the Lincoln County School District on November 29, 1966, in a special meeting, authorized the execution of a contract with Transportation Equipment Rentals, Inc., which contract provided for the purchase by Transportation Equipment Rentals, Inc. of the District's school buses and certain bus equipment; and,

"WHEREAS, on the 13th day of December, 1966, the District did receive a check from Transportation Equipment Rentals, Inc., in the amount of $143,672.84, which payment was due under the contract; and,

"WHEREAS, the District wishes to retain this sum, and others which may be forthcoming from this contract, in a fund separate from other funds of the District so that in the event the District shall have to buy certain buses, this fund would be available for that purpose.

"NOW, THEREFORE, BE IT RESOLVED:

"1. That a special fund is hereby created and called 'Bus and Bus Equipment Fund.'

"2. The purpose of this Fund shall be to receive the $143,672.84 and any and all other sums received from the sale of the buses and bus equip-

ment the District owned prior to the execution of the above mentioned contract, and any other amounts which might be budgeted in subsequent years. The purpose of this Fund shall be reviewed each year.

"3. The moneys retained in the Fund shall be deposited and invested in suitable securities, as provided by law. This Fund may be increased from year to year by budgeting and appropriations for the same. No expenditures shall be made from this Fund except by resolution and within limitations of subsequent budgets.

"4. That the sum of $143,672.84, which has been deposited in the General Fund, and any other amounts received out of the above contract, is now transferred to the Bus and Bus Equipment Fund. Any sums to be received under this contract shall also be transferred from the General Fund to the Bus and Bus Equipment Fund."

Dr. Donald E. Egge, the Superintendent of Schools for Lincoln County School District, testified that, in 1966, the school board sought to find some contractor to handle the transportation system of the district. At that time the district had some 43 or 44 buses, 21 of which were more than 10 years of age, and some were 14 years of age. No new buses had been purchased for several years and the fleet was in poor condition. By entering into the sale and lease-back agreement with Transportation Equipment Rentals, Inc., the use of 21 new buses was obtained immediately. The leasing firm established the bus fleet on an eight-year replacement cycle.

On direct examination, Dr. Egge testified that when the initial payment of $143,672.84 was received from the lessor, the school board decided to establish:

"* * * a reserve in case the school district

found that it was necessary to repurchase the bus fleet and operate it because costs were too high or because we found that, after a period of study, * * * we could do it * * * less expensively, then this would * * * enable the board then to make that kind of decision without a great delay and without a great immediate monetary requirement of the taxpayer."

Sums received from the sale of equipment, the rent of the bus shop and interest income on the fund were added to the account totaling $10,439, $14,000 and $17,500 in each of the last three years respectively. In each of these years and in the current year, it was necessary for the school district to vote for a levy outside of the six percent limitation imposed by the Constitution, Art XI, § 11, to obtain necessary additional funds to balance the school budget requirements.

In considering the legality of the creation by the Lincoln County School District of the Bus and Bus Equipment Fund, it must be held in mind that school directors can exercise only powers granted by statute, or such as result by fair implication from granted powers. "The liberty of action of executive officers of private corporations is not accorded to school directors." *School Dist. 106 v. New Amsterdam Cas. Co.*, 132 Or 673, 682, 288 P 196 (1930). On the other hand, we must heed the admonition of Mr. Justice Lusk in *School District No. 17 v. Powell*, 203 Or 168, 191, 279 P2d 492 (1955):

"It is properly conceded by the contestant that a school board has a wide discretion in the exercise of the authority committed to it. Courts can interfere only when the board refuses to exercise its authority or pursues some unauthorized course.

*McBee v. School District No. 48,* supra, 163 Or at p. 138. The wisdom or expediency of an act, or the motive with which it was done, is not open to judicial inquiry or consideration where power to do it existed. 78 CJS 920-921, Schools and School Districts § 128. Acts in abuse of discretion may be restrained, but the presumption is that there was no abuse, ibid, *School District No. 68 v. Hoskins,* 194 Or 301, 318, 240 P2d 949; and the burden of proving abuse of discretion is on the one asserting it, and it must be established by clear and convincing evidence. 78 CJS 922, 923, Schools and School Districts § 128. It is always to be borne in mind when questions of this kind arise that it is the school board, not the courts, to which the administration of the affairs of a school district is entrusted, and that the right to obtain relief from the courts against the action of the board depends upon a clear showing that such action is illegal or arbitrary. A court is not a Super School Board. 'With the exercise of discretionary powers courts rarely, and only for grave reasons, interfere. * * * Difference in opinion or judgment is never a sufficient ground for interference.' *Dailey v. New Haven,* 60 Conn 314, 319, 22 A 945, 14 LRS 69. See 2 McQuillin, Municipal corporations (3d ed) § 1033."

The district has argued that it has the power to provide transportation for pupils and to enter into rental or lease-purchase agreements covering motor vehicles to be operated by the district. ORS 332.405 and 332.425. With this we agree. But this is different from the issue before the court; namely, the method of financing an activity or program of the school district by the creation of a reserve fund in the district's budget. The specificity of the statutes relating to school district operation and financial administration (including ORS Title 30, and the Local Budget

Law) leads to the conclusion that the district's power to create a reserve fund must be found in a statute. Accordingly, the pertinent statutes have been studied.

Only a cursory examination of the chapters in ORS Title 30 relating to the financing of education is needed to show that no provision is made for the creation of reserve funds in those chapters.

The Local Budget Law, found in ORS chapter 294, contains a remarkably detailed set of statutory requirements, applicable to almost all municipalities with the power to levy tax, including school districts. It seeks to set up adequate fiscal controls, to provide for accountability of funds, to impose responsibility as to fiscal planning, to provide for an adequate flow of detailed information to the public, and to give powers for budget policing and enforcement. It was substantially revised in 1963, the basic drafting having been supplied by a Local Budget Law Advisory Committee appointed by the 1961 Interim Committee on Local Government (pursuant to HJR No. 23, approved in 1961).

An examination of the official records of the legislative committee (found in the State Archives) makes it abundantly clear that the 16 able and experienced members of the Advisory Committee were well aware of the potential abuse of special funds, emergency funds, sinking funds and the like. Such funds have been used in the past by the officers of taxing districts to sequester revenues for particular programs without the vote of the electors. See 31 Op Atty Gen 127 (1963).

The provisions of the Local Budget Law are particularly devised to prevent such abuse. See 23 Op Atty Gen 328 (1947); 25 Op Atty Gen 396 (1952). The definition of "budget resources" is all-encompas-

sing, including sales of property of any kind, interest on deposits and transfers of unused year-end balances of every kind (all of which are involved in the present case). All budget resources must be listed in detail. ORS 294.361. The amount of the budget to be levied for taxes can be determined only after these budget resources are used to offset the total of the budget requirements. ORS 294.381. The law has no provision for undisclosed cash or working capital. (See, for example, ORS 294.475.) Budget appropriations are limited to one year and there is no provision for a carryover. ORS 294.311 (3).

A school district's authority to declare an emergency and to make excess expenditures over those budgeted is dependent upon obtaining funds from sources outside the district. ORS 294.440. The Advisory Committee felt it had provided sufficient flexibility to meet contingencies by allowing the district to make transfers within and between budgeted funds, for good cause, upon publishing a resolution in its minutes. ORS 294.450. Another important provision to meet pressing needs, unforeseen at budget time, is found in the provision for the preparation of a supplemental budget, but this budget must be published and heard as in the case of the original budget, and does not authorize any increased levy of taxes. ORS 294.480. It is noted that a school district cannot reserve receipts from a revenue-producing property or facility and deposit them in a special fund under the Local Budget Law. ORS 294.366.

■ The defendant in the present suit sought to set up its special levy within the provisions of ORS 280.040 to 280.140. These sections are based on Or L 1945, ch 453. This chapter in turn constitutes a re-

organization and generalization for all taxing districts of powers created in Or L 1931, ch 122, and Or L 1939, ch 333, which were restricted to specially named taxing districts. It is significant that the Advisory Committee, referred to above, while modifying the Local Budget Law to require greater accountability, made no effort to modify ORS 280.040 to 280.140. These sections clearly give taxing districts power to set up special funds "for the purpose of financing the cost of any service, project, property or equipment which a subdivision has lawful power to perform, construct or acquire, and of repairs and improvements thereto and of maintenance and replacement thereof." ORS 280.050. The funding of school buses, their maintenance and repair, clearly would come within this provision.

ORS 280.060 to 280.090 specify the method for the executive authority of the taxing district to obtain a levy of taxes outside the constitutional limitation of Art XI, § 11, upon approval of a majority of the electors of the subdivision voting at the election called for this purpose. ORS 280.100 provides an alternative method, as follows:

"Any city, town or port, by ordinance, and any other subdivision, by resolution, may establish a financial reserve or special fund or funds for the purposes specified in ORS 280.050, without submitting the question to a vote of the electors, if the taxes levied or other funds used for the purpose of establishing the fund or funds are within the limitation imposed by section 11, Article XI, Oregon Constitution. The annual increments to such funds shall be limited to a period of not to exceed 10 years. Should unexpended balances remain after disbursement of the funds referred to in this section for the purposes for which they

were provided, such balances upon approval of the governing body of the subdivision duly entered into the minutes of its proceedings may be transferred to the general fund of the subdivision."

This is the only statute called to the court's attention or discovered by it which expressly empowers the establishment of a special reserve or fund by a school district upon resolution of the board of directors, without submitting the question to the vote of the electors of the district. If a district has no need to go outside of its tax base, prescribed under the Constitution, Art XI, § 11, it undoubtedly can elect to use ORS 280.100 or 280.060, as may appear wiser to the taxing district's executive body. If the district has no tax base whatsoever (as in the case of a newly formed district), there would have to be an election by the people to approve a tax base (including a reserve fund set up by resolution) or approving a special levy under ORS 280.060.

In the present instance, the defendant school district was able to raise $584,949 within the six percent limitation but its budget for the 1970-1971 school year required an additional levy outside the six percent limitation in the sum of $3,509,497. It has been argued that, since ORS 280.100 allows the creation of a special fund by resolution only "if the taxes levied or other funds used for the purpose of establishing the fund or funds are within the limitations imposed by section 11, Article XI Oregon Constitution," ORS 280.100 cannot be used by the defendant. The argument rests on the view that if the taxing district is required to go to the voters for approval of any amount in excess of its tax base for the general fund budget, ORS 280.100 cannot be utilized.

There is nothing in the language of the statute which gives support to this argument. On the contrary, the statute contemplates levies for a reserve fund over a period not to exceed 10 years. The expectation of the legislature that the fund could be raised year after year tends to negate an intent to restrict the use of ORS 280.100 as argued by plaintiffs. It seems improbable that a tax district (particularly a school district) could continue to meet its budgets over a 10-year period without the need for a levy outside the six percent limitation. However, nothing is placed in the statute to impose a moratorium on increments to the special fund if such a situation develops.

During the preparation of the budget, there is no categorization of the various anticipated expenditures to suggest that the cost of an item would be met by taxes obtained within or without the six percent limitation. The budget officer acts under the direction of the executive officer or governing body of the municipal corporation. ORS 294.331. The budget committee consists of members of the governing body and a number of qualified electors. ORS 294.336. The determination of the estimated tax levy (ORS 294.381) reveals the amount of levy which will be required to be voted outside the six percent limitation in order to meet the budget requirements. At this point (unless already resolved, as in the present case), the school board must determine whether or not a special fund is to be created by resolution under ORS 280.100 or by a vote of the electors under ORS 280.060 (using the procedure set out in ORS 310.360).

Whether or not a special fund should be charged to the levy within or without the six percent

limitation is a matter for the discretion of the school board and is of no concern to the court. In either case, the statutes provide the safeguards of budgeting, hearing, publication, the segregation of the fund, and for the return of the resource to the general fund of the tax district if not utilized. The danger of a secret, sequestered or hidden fund, hidden away among loosely described budget resources, does not exist. The principles of strict accountability, sought in the Local Budget Law, are present in ORS 280.040 et seq. The creation of the Bus and Bus Equipment Fund by the defendant school district was within its powers and was lawfully executed.

The plaintiffs were proper parties and are to be commended for their interest in public matters. The defendant must prevail on the merits and it is entitled to its costs.