IN THE OREGON TAX COURT
REGULAR DIVISION

Mark E. LUEDTKE,
*Plaintiff,*

*v.*

ESTACADA SCHOOL DISTRICT #108,
*Defendant.*

(TC 4584, 4585)

Terrance McCauley, Estacada, argued the cause for Plaintiff (taxpayer).

Todd Mitchell, Bullivant, Houser, Bailey, Vancouver, Washington, filed the motion and argued the cause for Defendant (the school district).

Decision for Defendant rendered December 23, 2002.

**HENRY C. BREITHAUPT, Judge.**

INTRODUCTION

In both of these proceedings, Plaintiff Mark Luedtke (taxpayer) raises challenges to budgetary actions of Defendant Estacada School District No. 108 (the school district). The cases are brought under ORS 294.485,[1] a portion of the local budget law, and challenge the levy certified by the school district to the Clackamas County Assessor for the 2002-03 year. Jurisdiction of such appeals is vested in this court under ORS 294.485(2). Defendant has moved for summary judgment in both cases.

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2001.

## FACTS

The facts on which the court bases its opinion have been established by stipulation or uncontested affidavit submitted by the school district. The parties have stipulated that any exhibit submitted in one of the cases may be considered in both cases. The facts are summarized below by case. In both cases, taxpayer's complaint included an attached page on which more than 10 individuals had signed their names and provided their addresses below the following statement:

"We, the undersigned as residents and interested taxpayers of Estacada School District #108, do hereby appeal to the Oregon Tax Court as provided by ORS 294.485 concerning the tax certification as filed with the Clackamas County Assessor by the School District on July 15, 2002."

*Case No. 4584*

Pursuant to an election held in 2000, $25.4 million of general obligation bonds were issued by the school district on February 15, 2001. The total amount of the tax levy in the 2001-02 tax year was $2,430,843.75, almost all of which had been collected, and all but approximately $642,000 of which had been expended on debt service payments by June 30, 2002.

In preparing a budget for the period July 1, 2002 to June 30, 2003, the school district's budget director estimated that $400,000 of the approximate $642,000 would be available for payment of debt service in that fiscal year. The remaining $979,000 needed to fund the payments coming due in the 2002-03 year was shown in the budget as an amount to be raised in the levy for the 2002-03 year.

During the 2001-02 fiscal year, the school district transferred $55,922 from a debt-service account for an earlier bond issue to its general fund.

Of the approximate $642,000 on hand from the proceeds of the initial levy, a portion, $14,034, was interest that had been earned on the initial levy proceeds that were invested pending application to debt service installments.

The total amount of interest and principal due and payable on the school district's bond issue in the year 2002-03

was $1,379,000. The total amount levied by the school district for debt service was $979,000.

*Case No. 4585*

In preparing the budget for the 2001-02 year, the school district's prior budget director was aware that the amount of "state support" for the district might be increased by $2 million over the initial projection. Apparently, that budget director therefore increased the district's contingency account by $2 million.

Upon taking office, the current budget director reviewed that approach and revised the estimated increase in state support for 2002-03 downward to $750,000. The budget director also made offsetting revenue and expense estimates of $1 million so that if the estimate of the amount of state support receipts was too conservative, any additional receipts could be expended without having to adopt a supplemental budget.

The foregoing facts relate to the school district's general operating budget and do not relate to amounts levied or expended for debt service.

In case 4585, taxpayer has requested that the court order a reduction in the school district's permanent rate that was used to calculate the 2002-03 levy.

## ISSUES

1. Have the persons challenging the action of the school district properly brought these cases before the court?

2. Did the school district substantially comply with its obligations under the local budget law and, if not, may the court award the relief requested?

## ANALYSIS

*Are These Cases Properly Before the Court?*

The school district asserts that the complaining parties did not bring this proceeding in the proper fashion and within the proper time. The school district points to the fact that ORS 294.485(2) requires that 10 or more interested taxpayers must appeal by filing a complaint in this court within

30 days of certification of the tax levy to the county assessor. The school district notes that only taxpayer is named as Plaintiff on the complaint, that the complaint makes no reference to or incorporation of the appendix containing the signatures and position of other taxpayers, and that the appendix does not incorporate the substance of the complaint to which it is attached.

Importantly, the school district has not asserted or introduced any proof that the persons who signed the appendix were not "interested taxpayers," within the meaning of ORS 294.485(2). The connection of the complaint and the appendix is demonstrated by the fact that taxpayer was both the nominal Plaintiff in each complaint and a signatory to each appendix.

■ ORS 294.485 does not require that all interested taxpayers be listed as plaintiffs or that they all sign as plaintiffs on the signature page of the complaint. Indeed, ORS 294.485 speaks both of an "appealing party" filing a complaint and "a complaint * * * filed under this section by 10 or more interested persons."

To the extent the matter is one involving the rules of this court, those rules require that pleadings be construed in order so as to achieve substantial justice. TCR 12. The purpose of the local budget law is to involve taxpayers in the budgeting process of local government. It would be an overly harsh result to disqualify this appeal because of possible errors in form where, on the substance of the matter, the requested number of taxpayers clearly expressed their concern with the school district's actions by reference to a specific levy certification and the appropriate statutory basis for the appeal. The complaints in both cases are properly before this court.

*Case 4584: The Levy for Debt Service*

As to the debt service component of the levy for 2002-03, taxpayer asserts that the school district undercounted resources available to it for debt service, other than resources to be derived from the proposed tax levy, in the following ways:

1. The school district, in showing only $400,000 on hand, understated resources by $242,000 because it in fact had $642,000 on hand.

2. The transfer of $55,922 made two fiscal years earlier out of the debt service fund should not have been made, and its effect should be reversed in calculating available resources for 2002-03.

3. Interest earned in the debt service fund was not taken into account in computing resources available.

Taxpayer was not specific in his complaint or submissions to the court as to the precise statutory linkage, if any, between the alleged errors of the school district and the permissible amount of the school district levy.

Taxpayer apparently believes that the statutory framework in force until 1999 remained applicable to the 2002-03 year. Under ORS 294.381 (1997), the school district was required to estimate the amount of revenues raised through the imposition of taxes for the ensuing year. Unappropriated ending fund balances and amount of moneys reserved were to be included in that estimate. ORS 294.381(1), (2) (1997). However, the "estimate of budget resources excluding the amount for taxes to be certified to the assessor for the ensuing year" was to be subtracted from the estimate of revenues to be raised through taxes. ORS 294.381(3)(1997). With another adjustment not relevant here, the remainder became "the estimate of ad valorem taxes." ORS 294.381(5) (1997). After certain other adjustments and completion of notice and hearings on the budget, the estimate of taxes to be levied was reported to the assessor. ORS 294.381(8) (1997).

The system prevailing until the 1999 legislative session was, therefore, one in which the tax levy was determined by reference to the "budget resources" available to a municipal corporation at the beginning of the year, with the only tax levy authorized being the needed amount that exceeded available resources. *See Napier v. Lincoln County School Dist.*, 4 OTR 221, 228, 229 (1970) ("ORS 294.381 makes clear the legislative intent that the municipal corporation shall levy taxes only to the extent necessary to balance the budget

requirements after taking into account all other budget resources."). Under that system, understated resources could result in improperly high levies subject to challenge in this court.

■　However, unnoticed by either party in this case, the statute that made budget resources a critical component of the calculation of the tax levy was fundamentally altered in 1999. *See* Or Laws 1999, ch 632, § 5. The 1999 legislation shifted the entire focus from a calculation of what could be "raised" to what will be "received." In addition, the 1999 legislation eliminated entirely the role of budget resources at the beginning of a budget period as an element that would reduce the amount of a property tax levy. *Compare* ORS 294.381(3) (1997) to ORS 294.381 (1999). A review of the legislative history of the provision does not provide an explanation for the changes, other than they were in response to Measure 50. Testimony, Senate Committee on General Government, SB 1201, April 15, 1999, Ex O (Statement of Lance Colley).

■　Under the statutes applicable to this case, it appears that the school district's estimate of taxes to be levied and received is the summation of (1) a permanent or statutory rate component for operating taxes, (2) a component for local option taxes, and (3) "An amount equal to the principal and interest on all bonded indebtedness of the municipal corporation that is due and payable in the ensuing year * * *." ORS 294.381(2)(d). That summation, with no reduction for resources on hand, is stated to be for use "by the municipal corporation for purposes of complying with the requirements of ORS 310.060(1)." ORS 294.381(4).

■　ORS 310.060 requires municipal corporations to certify tax levies. Reading ORS 294.381 in context with ORS 310.060, the amount of estimated tax to be received as determined under ORS 294.381 forms the basis of the tax levy certified under ORS 310.060.

■　The provisions of the local budget law as currently written do not, therefore, provide a basis for challenge where the amount levied for debt service is equal to or less than the amount of principal and interest due and payable in the

ensuing year.[2] Here, the amount levied for debt service was $979,000. As the amount of principal and interest due and payable in the 2002-03 year was $1,379,000, there has been no violation of the relevant statutes.

*Case 4585: Operating Levy*

In case 4585, taxpayer makes assertions regarding perceived irregularities in the school district's accountings and demands an explanation of the same. The particular focus of the complaint appears to be how the budget either improperly reflected possible receipts and expenditures of state school support or failed to take into account funds on hand. The relief taxpayer requests is a reduction to the permanent rate assigned to the school district and used in calculating the levy for 2002-03.

Again, as in case 4584, taxpayer apparently believes that the former statutory provisions of the local budget law, in particular the 1999 version of ORS 294.381, are still applicable. As explained above, 1999 changes to the statutes were significant and the legislative history indicates they were made in response to the adoption of Measure 50.

■ Most importantly, in legislation implementing Measure 50, the legislature has provided for the school district to have a permanent rate for operating taxes. ORS 310.200 to 310.242. That rate is not developed through consideration by the school district, or this court, of the needs or resources of the school district. Such considerations are gone from ORS

---

[2] The court is aware the 1999 amendments appear to have the effect of making many of the provisions of the local budget law irrelevant to a challenge under ORS 294.485, a statute that provides this court with jurisdiction to review matters that affect the levy. The provisions may nonetheless have meaning insofar as failure to comply with them may be a basis for other remedies in courts or in the political process.

The 1999 legislative changes affect not only taxpayer's bases for challenge in this case, but also some or all the school district's defenses. Under ORS 294.371, the school district in the past could have included unappropriated ending fund balances in its budget to address cash flow needs for the year following the year for which the budget was prepared. Inclusion of such an ending fund balance would have increased the authorized levy for the current year. Now, however, although the statute describing an unappropriated ending fund balance remains, the amendments to ORS 294.381 make that item, and perhaps many other items, of no further functional significance in calculating the property tax levy.

294.381. For years beginning on or after July 1, 1998, each taxing district is authorized to levy the full amount of its operating taxes a sum equal to taxes imposed at the rate established as the permanent rate for the district. ORS 310.055(3). No consideration of resources on hand is required. The only exception to the use of the permanent rate is where a district, by its choice, certifies to the assessor a rate less than the permanent rate. The record is clear that no rate less than the permanent rate was certified by the school district in this case.

Taxpayer has not cited to the court, and the court has not found, a statute that would permit the court to order a reduction in the permanent rate. Now, therefore,

IT IS ORDERED that Defendant's motion for summary judgment is granted in both cases. Each party bears its own costs.