Argued October 31, affirmed November 23, petition for rehearing
denied December 6, 1960

## PADBERG et al v. MARTIN et al
## WEST et al v. MARTIN et al
### 357 P. 2d 255

*John H. Kottkamp*, Pendleton, argued the cause for appellants. On the briefs were Fabre, Collins & Kottkamp, Pendleton.

*P. W. Mahoney*, Heppner, argued the cause for respondents. On the brief were Mahoney & Abrams, Heppner.

Robert Y. Thornton, Attorney General, and Cecil H. Quesseth, Special Assistant Attorney General, Salem, filed a brief amicus curiae.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and KING, Justices.

## SLOAN, J.

On July 1, 1959, the Morrow County Unit School District was reorganized into an administrative school district pursuant to the Administrative School District Act, Oregon Laws 1957, ch 619 (ORS 330.505 et seq). Plaintiffs were residents and taxpayers in the district; their children attended its schools. Defendants constituted the Board of Directors of the newly formed administrative district. Plaintiffs filed these consolidated proceedings to obtain a declaration that the reorganization of the County Unit District to an administrative district was unconstitutional and void. In the alternative plaintiffs asked judicial restraint of the defendants' order transferring the place of attendance of their grade school children from schools within their community of residence to schools in other communities. The trial court sustained a demurrer to plaintiffs' complaint and they appeal from the decree which followed denying them relief.

Oregon Laws 1957, ch 619, hereafter referred to as the Act, was a legislative fiat to require the people in the counties of this state to reorganize the confusing pattern of school districts into more efficiently operable districts to be designated as Administrative School Districts. The Act was comprehensive. It was not permissive but, as indicated, mandatory. It compelled the formation of a county committee in each county to plan for the reorganization of the school districts within the county. Provision was also made to include reorganization of those districts which overlapped into more than one county. The plan was to "afford greater equalization of educational opportunities for the inhabitants of the county, more efficient and economical administration of public schools and a more equitable

distribution of public school revenues." ORS 330.-535 (9).

When the plan was completed the Act required that various public hearings be held to permit the public to be informed. The Act also required that the plan be submitted to the State Board of Education. The approval of that board was necessary before the plan would go into effect. After the plan was approved by the state board it was necessary that it be submitted to a vote of the people within the area affected. Except, and this is the crucial point in the case, that in the reorganization of those districts where no boundaries were changed, a vote of the people was not required. Approval by the state board was sufficient. ORS 330.625. It is this provision regarding election that plaintiffs claim is invalid. They say it denies equal protection of the law to permit the people in some districts the right to vote on a reorganization plan and to deny it to the people of other districts.

■■ Oregon Constitution, Art VIII, § 3, empowered the legislature to adopt the Act in question. There can be no doubt of the constitutional power of the legislature to create, abolish or alter school districts, with or without a vote of the people within the area involved.

"The formation, dissolution, and change in boundaries of school districts are legislative matters. School districts may be abolished or dissolved at the will of the legislature, subject, of course, to constitutional limitations, if any. It is not necessary that the districts affected give their consent to such action, except as otherwise provided by statute. A change of boundaries of school districts may occur in a variety of instances, as in the case of consolidation of districts, division to create new districts, taking from one district and adding to another, cutting off a part of a district, annexing

unorganized territory to a district, etc. * * *"
*School Dist. No. 68 v. Hoskins et al,* 1952, 194 Or
301, 311, 240 P2d 949.

See also, *Monaghan v. School District No. 1,* 1957, 211
Or 360, 315 P2d 797.

■ Since the legislature had the power to dissolve,
change or abolish districts without election the reasons
for providing an election in those instances when
boundaries were changed becomes apparent. A change
of boundaries necessarily includes a change of any
bonded or other indebtedness, or of any other con-
tractual obligation of an existing district and a change
in assets, including property subject to taxation. By
providing for an election, accordingly, the legislature
wanted to avoid any constitutional objections that
might be made to a change in the financial commitments
of a district without a vote of the people. A change in
boundaries could impose upon the people of the whole
new administrative district the bond obligations of
one or more of the previously existing districts.

This can be seen, in part, by the provisions of ORS
330.620 which limit the right of judicial review of a
reorganization proceeding:

"(4) No proceedings shall lie in any court on
any issue in the reorganization of school districts
under ORS 330.505 to 330.780 except the adjust-
ment of property, assets, debts and liabilities or
where the legality of the formation of the district
is in question * * *."

The classification provided by the legislature in
respect to elections was reasonable. It is apparent that
a change of an established district from one form of
administration to another without change of boundary,
and the concomitant change of assets and liabilities,

would provide no cause to submit the matter to a vote of the people. In such a case as here the purpose of the Act, before stated, was accomplished with the change of administrative policy and power of the district.

If the Act had required that a reorganization accomplished without a change of boundary was to be submitted to the legislature for approval, no one could doubt the validity of such a provision. In this Act the legislature delegated the power of approval to its agent, the State Board of Education. That delegation of power is not challenged.

The objection that the reorganization of this district was void for want of an election is without merit.

■ Plaintifffs also claimed that the previously existing county unit district could not be dissolved without a vote of the people as required by ORS 333.510. The short answer to that is that ORS 330.505 (4), 330.625 and 330.650 make it clear that when the reorganization of an administrative district is completed it supersedes all districts previously existing within the area included within the administrative district boundaries. The Act does not contemplate that existing districts must be dissolved before the administrative district assumes jurisdiction.

■ Plaintiffs, however, argue that even if the district is legally and constitutionally formed, the board still had no authority to transfer pupils and classes from one school to another. ORS 330.650 grants to administrative districts "all the rights, powers, duties and obligations of first class districts as provided by law and as provided under the general school laws applicable to school districts of all classes." The "rights, powers and duties" of school districts include:

"Except where statutes are inconsistent with

this section, district school boards shall have entire control of their district public schools and of teachers employed by the district." ORS 332.110.

"Each district school board may establish rules and regulations for the government of the schools and pupils consistent with the rules and regulations of the State Board of Education." ORS 336.030.

"Public school pupils shall comply with lawful regulations for the government of such schools, * * *" ORS 336.160 (1).

"The district school board of a first class district or a union high school district may provide transportation for pupils when deemed advisable by the board." ORS 338.010 (1).

Legislative requirements for a "comprehensive reorganization plan" within the Act itself included "* * * recommendations respecting the location of schools, utilization of existing buildings * * *" and the "transportation requirements under the plan." ORS 330.530.

The grant of power to build, furnish and equip school buildings, ORS 332.380, must include the power to assign students to the respective buildings.

The defendant school district had the power to transfer the students in question.

■ Nor will the court interfere with the wisdom of the board's decision.

"* * * It is always to be borne in mind when questions of this kind arise that it is the school board, not the courts, to which the administration of the affairs of a school district is entrusted, and that the right to obtain relief from the courts against the action of the board depends upon a clear showing that such action is illegal or arbitrary. A court is not a Super School Board. 'With the

exercise of discretionary powers courts rarely, and only for grave reasons, interfere. * * * Difference of opinion or judgment is never a sufficient ground for interference.' *Dailey v. New Haven*, 60 Conn 314, 319, 22 A 945, 14 LRS 69. * * *" *School District No. 17 v. Powell*, 1955, 203 Or 168, 191, 279 P2d 492.

Other issues were presented which we consider unnecessary to decide in this case.

The decree of the trial court is affirmed.