Argued and submitted September 9, 1985, affirmed March 26, Multnomah County Education Service District's reconsideration denied May 9, Jackson Education Coalition's reconsideration denied May 9, both petitions for review denied September 16, 1986 (301 Or 765)

SCHOOL DISTRICT NO. 1, MULTNOMAH COUNTY, OREGON et al,
*Appellants - Cross-Respondents,*

*v.*

MULTNOMAH COUNTY EDUCATION SERVICE DISTRICT et al,
*Respondents - Cross-Respondents,*

OREGON DEPARTMENT OF EDUCATION et al,
*Respondents - Cross-Appellants,*

(A8208-04744; A28247)

SCHOOL DISTRICT NO. 1,
*Appellant,*

*v.*

MULTNOMAH COUNTY EDUCATION SERVICE DISTRICT BOARD OF DIRECTORS,
*Respondent.*

JACKSON EDUCATION COALITION,
*Respondent.*

(A8303-01812; A29096)

SCHOOL DISTRICT NO. 1,
*Appellant,*

*v.*

CLACKAMAS COUNTY EDUCATION SERVICE DISTRICT BOARD OF DIRECTORS,
*Respondent,*

JACKSON EDUCATION COALITION,
*Respondent.*

(A8304-02519; A29109)

In the Matter of the Proposed Formation of JACKSON SCHOOL DISTRICT NO. 14-14JT.

JACKSON EDUCATION COALITION et al,
*Petitioners - Cross-Respondents,*

*v.*

BOARD OF EDUCATION OF THE STATE
OF OREGON et al,
*Respondents - Cross-Respondents,*

*and*

SCHOOL DISTRICT NO. 1, MULTNOMAH
COUNTY, OREGON et al,
*Respondents - Cross-Petitioners.*

(A29964)
(cases consolidated)
716 P2d 759

John W. Burgess, Portland, argued the cause for respondent - cross-respondent and petitioner - cross-respondent Multnomah County Education Service District Board. With him on the briefs were Phillip D. Chadsey and Stoel, Rives, Boley, Fraser & Wyse, Portland.

Mark C. McClanahan, Portland, argued the cause for appellants - cross-respondents and respondents - cross-petitioners School District No. 1, Multnomah County, Oregon, and its individual Board members. With him on the briefs were Jonathon L. Goodling and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Owen D. Blank, Portland, argued the cause for respondents - cross-petitioners Schools for the City, James A. Meyer, Mary Lou Munroe, Sara Frewing and Barbara

Thomas. With him on the briefs was Joseph S. Voboril and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Owen D. Blank, Portland, argued the cause and filed a brief *amicus curiae* for Schools for the City in A28247. With him on the brief was Joseph S. Voboril, Portland.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent Oregon Department of Education and respondent and respondent - cross-respondent Oregon State Board of Education. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem. Respondents' cross-appeal was dismissed on May 13, 1985.

John R. Faust, Jr., Portland, argued the cause for respondent - cross-respondent and petitioner - cross-respondent Jackson Education Coalition and its individual members. On the briefs were Mildred J. Carmack, Jay T. Waldron and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

John C. Caldwell, Oregon City, waived appearance for Clackamas County Education Service District.

No appearance for Multnomah County Education Service District.

No appearance for Clackamas County Education Service District Board and its individual Board members.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

The Multnomah County Education Service District Board (MCESD), the Clackamas County Education Service District Board (CCESD) and the Jackson Education Coalition and 16 of its individual members (the Coalition) seek review of a decision of the State Board of Education which found to be unsatisfactory, and withheld approval of, a reorganization plan to create a new school district out of the former attendance area of Jackson High School. Schools for the City (SFC) and Multnomah County School District No. 1 (Portland) cross-petition, arguing, among other things, that the State Board did not have jurisdiction to consider the proposed plan. Portland also appeals from circuit court judgments denying declaratory and injunctive relief and dismissing a writ of review proceeding involving the same reorganization plan. Those appeals are consolidated with the petitions for review.

In July, 1981, Portland voted to close Jackson High School. In August, 1981, the Coalition requested that MCESD exercise its authority as a "committee" under ORS 330.530 and ORS 330.505(1) by preparing a school district reorganization plan to form a new administrative school district out of the former attendance area of Jackson High School. MCESD acted on that request and, after investigation and a hearing, drafted and adopted a proposed plan on January 18, 1983. A small portion of the proposed district is within Clackamas county, but not within the jurisdiction of CCESD. CCESD reviewed and concurred in the plan, purportedly pursuant to ORS 330.530 and ORS 330.547, *infra,* but expressly deferred to the judgment of MCESD as to its merits. The plan was submitted to the Board pursuant to ORS 330.555, and petitions objecting to it were submitted by Portland and SFC, under ORS 330.557(1).

The Board issued an order adopting procedures and setting forth the scope of its review ("the Board considers the issues anew") and adopted a temporary rule setting forth the standard for its review of the plan. OAR 581-01-012, *infra.* An evidentiary hearing was completed on July 13, 1983, and on August 29, 1983, the Board issued a final order refusing to approve the plan, because it did not "provide a satisfactory school districting system" consistent with the requirements of

ORS 330.535.[1] The Board offered its assistance to MCESD in revising the plan. ORS 330.570.

We review this matter as a contested case under ORS 183.482. ORS 330.557.[2] Our review is confined to the record, and we may not substitute our judgment for that of the Board as to any issue of fact or agency discretion. We are authorized to reverse the Board's decision if we conclude that it is based on an erroneous interpretation of law or that the Board acted outside the range of its delegated discretion.

■ We consider the cross-petitions first. Portland contends that the plan, which, in its words, calls for a reorganization which takes the form of a "pure secession," is not authorized by the Administrative School Districts Act, ORS 330.505 *et seq.* Petitioners counter that the contemplated

---

[1] ORS 330.535 provides:

"The reorganization plan shall be supported by studies and surveys conducted by the committee, with technical assistance available from the Department of Education. The reports of the results of these studies and surveys shall include the following matters:

"(1) The adequacy of the educational program in the various districts in the county.

"(2) The number of pupils attending school in the various districts in the county and the population of each district, existing and proposed.

"(3) The assessed taxable valuation of existing districts per district and per pupil and the differences in such valuations under possible reorganization plans.

"(4) The location, condition and future use of existing buildings and equipment.

"(5) Natural community areas.

"(6) Location and condition of roads, highways and natural barriers within districts.

"(7) Transportation of pupils.

"(8) Geographic and economic conditions within the county.

"(9) Such other matters as afford greater equalization of educational opportunities for the inhabitants of the county, more efficient and economical administration of public schools and a more equitable distribution of public school revenues."

[2] ORS 330.557(2) provides, in part:

"Any petitioner may petition the Court of Appeals in the manner provided by ORS 183.482 for judicial review of the decision or determination of the State Board of Education denying or overruling the petition of such petitioner to revise or modify the final plan of reorganization * * *."

reorganization, although not a consolidation of multiple districts, is a reorganization within the meaning of the Act.

A reorganization is defined as "the formation of administrative school districts." ORS 330.505(3). Although we agree with Portland that the legislative history indicates that the purpose of the Act was to "reorganize the confusing pattern of school districts into more efficiently operable districts," *Padberg; West et al v. Martin et al,* 225 Or 135, 357 P2d 255 (1960), and that, at the time of enactment, it apparently was contemplated that the law would result in larger consolidated districts, there is no indication that the Act does not permit the organization of smaller districts, if the reorganization plan satisfies the requirements of the Act. *See* 42 Op Att'y Gen 243, 246 (1982).

■　　　The other issue which we address on the cross-petitions is whether the education service districts followed the correct procedure in the preparation and adoption of the plan. Portland and SFC assert that the Board did not have jurisdiction to consider the plan, because it had not been prepared jointly by the two districts, because CCESD was not involved in its development and expressly deferred to the judgment of MCESD as to its merits. The districts urge that that procedure is sufficient under the statute, especially because none of the territory affected by the plan is within the jurisdiction of CCESD and the effect of the plan on Clackamas County would be *de minimis.* Additionally, the districts point out that the procedure of concurring in the plan was consistent with the statute and the advice of the attorney general. 42 Op Att'y Gen 243 (1982).

We conclude that the procedure complied with the requirements of the law as contemplated by the statutory scheme. ORS 330.530 provided,[3] as pertinent:

"* * * A plan for the reorganization of school districts

---

[3] In 1983 and 1985, the legislature undertook revisions of the Administrative School Districts Act, including major substantive changes to ORS 330.565, 330.540, 330.530, the repeal of certain sections and the enactment of a new section, ORS 330.543. References to the changes will be made throughout this opinion, when pertinent. ORS 330.530 (*amended by* Or Laws 1985, ch 201, § 1) now provides, in pertinent part:

"(1) * * * A plan involving territory lying in the areas of jurisdiction of two or more committees shall be concurred in by all committees."

involving territory lying in two or more counties shall be prepared by the joint action of the committees of the respective counties."

ORS 330.547 provides, in part:

"(1) A committee shall complete all action on a plan involving a joint school district required under ORS 330.530 within 30 days after the plan was submitted to it.

"(2) If the committee refuses to concur in the plan, it shall appoint a disinterested person to represent it on the arbitration board * * *."

It is true that ORS 330.530 speaks of joint action in the preparation of a plan and seems to suggest that the committees of the counties affected by a joint districting plan must act jointly in the *development* of the plan. That reading is not borne out, however, by the working procedures for joint action contained in ORS 330.547. Subsection (2) of that section, in describing the procedures to be followed when a committee refuses to "concur" in a plan, suggests that concurrence in a plan is all that is necessary to satisfy the requirement of preparation by joint action. We also note that there is no requirement that the non-preparing committee make an independent evaluation of the merits of the plan. The procedure followed was sufficient to satisfy the provisions of ORS 330.530.

■ ORS 330.565[4] requires that the Board approve a plan if it finds that the plan "provides for a satisfactory school districting system." No standards are set out in the statute to assist the board in making that evaluation. In their petitions for review, the education service districts and the Coalition assert that the Board incorrectly held that the standard for reviewing a reorganization plan is encompassed in ORS 330.535, particularly subsection (9):

"The reorganization plan shall be supported by studies and surveys conducted by the committee, with technical assistance available from the Department of Education. The reports of the results of these studies and surveys shall include the following matters:

"* * * * *

---

[4] ORS 330.565 was amended by Or Laws 1983, ch 812, § 4.

"(9) Such other matters as afford greater equalization of educational opportunities for the inhabitants of the county, more efficient and economical administration of public schools and a more equitable distribution of public school revenues."

The Board's own rule specifically refers to the statute:

"In order for the State Board of Education to approve a plan for reorganization filed under ORS 330.505 to 330.780, the Board must find that the plan complies with the following standards:

"A. Does the reorganization contain the elements required to be set out in the plan by ORS 330.530(2);

"B. *Is the plan supported by the studies and surveys required by ORS 330.535 * * *.*

"C. Does the plan provide for a satisfactory school districting system (in reviewing this question the State Board will consider whether the plan for the proposed district shows financial and administrative potential to meet the standard for public schools published by the Department of Education in 1980 * * *)." OAR 581-01-012. (Emphasis supplied.)

The Board's order applying both the statute and the temporary rule required, in short, that the studies conducted as required by ORS 330.535 show that the plan would further the considerations expressed in ORS 330.535(9):

"Provisions of ORS Chapter 330 provide standards by which the State Board is to judge whether the proposed plan should be adopted. OAR 581-01-012(A)-(C) restates the statutory standards but does not (and could not) change their underlying meaning.

"* * * * *

"The State Board concludes that [ORS 330.535(9)] requires that before the State Board can approve the plan as satisfactory under ORS 330.565 or OAR 581-01-012(C) it must find that the plan affords:

" '* * * greater equalization of educational opportunities for the inhabitants of the county, more efficient and economical administration of public schools and a more equitable distribution of public school revenues.' "

The Board found that the proposed plan did not meet any of the quoted criteria. The fact that it did not is uncontested, and

petitioners do not contend that the order is not supported by substantial evidence. The Board concluded that the plan did not provide a satisfactory school districting system.

Petitioners concede that the provisions of ORS 330.535, particularly subsection (9), are "strong evidence of policies to be served by the Reorganization Act." 42 Op Att'y Gen at 255; *see also Padberg; West et al v. Martin et al, supra.* They submit, however, that that section only provides guidance to the local committees as to what is to be included in a plan and that it was error for the Board to conclude that it was compelled to recognize the statute as the standard for its review. Petitioners place special significance on the placement of ORS 330.535 in "Phase One" of the Act, which, they reason, governs only the local committee's development of a plan, which, they argue, is beyond the scope of the Board's review. They also argue that the Board's rule does not duplicate the provisions of ORS 330.535 but, rather, repeats the "standard" contained in ORS 330.565, which requires only that a plan provide a satisfactory school districting system. OAR 581-01-012(C) (the proposed district must have "financial and administrative potential," as determined by the Department of Education in its publication of 1980). Petitioners contend that subparagraph (B) of the rule, which requires that the plan be "supported by the studies and surveys required by ORS 330.535," does not authorize an inquiry into whether the studies show that the plan furthers the considerations contained in ORS 330.535(9), but only authorizes an inquiry into whether the studies were in fact conducted. Petitioners ultimately reason that, under the Board's rule and the statutes, a plan can be "satisfactory" and subject to the Board's approval, without meeting all of the criteria of ORS 330.535(9).

Portland argues that the Board's rule is consistent with ORS 330.535 and that it was within the Board's authority to incorporate the provisions of that section in its rule. We agree. As counsel for the Coalition concedes, the Board is delegated broad authority under ORS 330.565 and ORS 330.570 to determine whether a plan is "satisfactory" and is authorized to adopt rules and to establish policy in the exercise of that authority. We see no reason why the Board may not adopt the equivalent of ORS 330.535(9) as a part of the standard for its review of a plan, and it has done so. Subparagraph (B) of the rule clearly authorizes an inquiry

into whether studies conducted under ORS 330.535 support the plan. As we read the Board's order, it decided that, because the studies that were conducted indicate that the plan did not meet any of the criteria contained in ORS 330.535(9), the plan was not satisfactory. That decision was clearly within the Board's authority. We need not speculate as to what the Board would have decided if it had found that the plan met some, but not all, of the criteria.

The final issue on the petitions concerns the scope of the Board's review. Petitioners assert that, in interpreting its own rule to require that a plan meet the criteria set out in ORS 330.535(9), the Board improperly substituted its judgment for that of the education service districts, in violation of Article III, section 1, of the Oregon Constitution, which deals with the separation of powers of the three major departments of government.[5] The alteration of school district boundaries is a legislative function, *School Dist. 7 v. Wiessenfluh,* 236 Or 165, 387 P2d 567 (1963); *School Dist. No. 68 v. Hoskins et al,* 194 Or 301, 311, 240 P2d 949 (1952), which may be delegated to a local body. Petitioners argue that that authority here has been delegated exclusively to the education service districts and that to permit the appointed Board, an agency of the executive branch, to review the policy decisions of the locally elected district board would constitute a violation of the separation of powers.

The fundamental flaw in that argument is that the legislature has not delegated authority to reorganize school districts to the education service district exclusively. It is clear from the legislative scheme that the responsibility for school district reorganization has been delegated to both the districts and the Board, with separate responsibilities. A district has the primary responsibility to develop a plan, which is subject to mandatory review by the Board. The Board, in turn, may approve or reject the plan, but has no authority to develop its own plan; it is not clear whether the Board may revise the

---

[5] Or Const, Art III, § 1, provides:

"The powers of the Government shall be divided into three seperate [*sic*] departments, the Legislative, the Executive, including the administrative, and the Judicial; no persons charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided."

plan. ORS 330.557 appears to say that it may do so, but ORS 330.570 appears to say that any revision should be prepared by the district. Under its authority to evaluate a plan, the Board has the power to establish standards for its evaluation consistent with the legislative scheme, and it did so here. In rejecting the proposed plan it acted within its delegated authority and has not carried out any functions that were not delegated to it.[6] There is no violation of the constitutional separation of powers.

■ Additionally, we think that it is plain that, under the legislative scheme, the Board is required to make an independent review of a reorganization plan, and we are satisfied that ORS 330.557(1) and ORS 330.560 contemplate a process of independent factfinding as well. The Board's authority to make findings, ORS 330.565;[7] ORS 330.570, the parties' right

---

[6] To accept petitioners' argument regarding the separation of powers would require that we accept the proposition that the district, in carrying out its responsibility to develop a plan, is in the legislative branch of government. However, school districts and the Board are, technically speaking, agencies of the executive branch. *Monaghan v. School District No. 1,* 211 Or 360, 374-76, 315 P2d 797 (1957). The district's delegated authority to develop a plan does not make it a part of the legislative branch any more than the Board's delegated authority to review a plan makes it a part of the judicial branch.

[7] ORS 330.565, (*amended by* Or Laws 1983, ch 812, § 4) now states that the Board's finding that the plan is satisfactory "shall be made on the basis of the record before the committee, as well as its own hearings, and shall be based on findings described in ORS 330.543."

ORS 330.543 was enacted in 1983 (Or Laws 1983, ch 812, § 2) and amended in 1985 (Or Laws 1985, ch 364, § 4). It requires specific findings by the committee before approval of a reorganization plan and also provides for the first time for a formal hearing procedure and the maintenance of a hearing record:

"(1) A reorganization plan shall be approved only if the committee makes each of the findings described in ORS 330.090(4) and in addition finds that the following objectives of reorganization will likely be achieved:

"(a) A more effectively coordinated program for the students and communities affected by the plan;

"(b) A more efficient and economical administration of the public school systems affected by the plan;

"(c) Substantially equal educational opportunities for the students affected by the plan;

"(d) Substantially equal availability of financial resources at the local level for all students affected by the plan; and

"(e) Provision for the protection of tenure, salary placement and pension rights of employes affected by the reorganization.

"(2) For purposes of this section, a plan of reorganization is deemed to affect

to present evidence and to be represented, ORS 335.557(1), and the nature of our review of the Board order as a contested case, ORS 330.557(2); ORS 183.482, are among the factors which lead us to those conclusions.

Portland's declaratory judgment action sought a determination that the Administrative School Districts Act does not apply to secessions, or the detachment of territory from an existing school district, and also sought a ruling as to the appropriate election procedures in the event that the reorganization plan was approved by the Board and put to a vote of the people. ORS 330.585.[8] That portion of the appeal dealing with election procedures is rendered moot by subsequent modifications of the election laws.[9] The trial court's ruling that the plan was a reorganization within the meaning

---

students, residents and districts of the preexisting districts whenever the formation of a new administrative school district will likely have a significant impact, directly or indirectly, on the utilization of their facilities or on their programs, costs, revenues, assessed valuation per student, levying authority or tax rates.

"(3) The committee's findings shall be based on the studies and surveys described in ORS 330.535 and the record of its hearings and shall concern only those objective factors as are inherent in the formation of the new administrative school district or districts under the proposed reorganization.

"(4) The hearings provided for in ORS 330.550 and 330.555 shall be presided over by a hearings officer appointed by the committee. The hearings officer shall prepare proposed findings including the information described in ORS 330.550(2), and furnish them to the committee and all interested persons or districts requesting them at least 10 days prior to the first meeting of the committee where they will be considered. The members of the committee need not attend such hearings. The record made before the hearings officer shall be reviewed by the committee which may adopt, modify, alter or reject all or any of the proposed findings.

"(5) The State Board of Education shall adopt minimum standards and definitions pertaining to the objectives of reorganization, taking into account the effect reorganization may have on achieving the goals of modern education and the other factors described in ORS 326.051(1)."

[8] ORS 330.585 (*amended by* Or Laws 1983, ch 83 § 52; ch 350 § 141; ch 812, § 7a; Or Laws 1985, ch 364, § 3) now provides specifically for elections in cases involving "detachment of territory from an existing unified common school district."

[9] Formerly, the provision dealing with elections, ORS 330.585, was inequitable as applied to the type of reorganization sought here, because the election was limited to qualified voters residing in the district to be formed, thereby excluding voters in the remaining affected school district. The 1983 legislature corrected that problem and amended ORS 330.585 to provide that the residents of all "affected" districts are permitted to vote. Or Laws 1983, ch 812, § 7a. Should MCESD adopt a new plan, that amendment would be applicable to an election held after the Board's approval of the plan.

of the Act is affirmed. Portland's appeal from the writ of review proceeding is affirmed.[10]

Affirmed on petitions and cross-petitions (A29964); judgment in declaratory judgment proceeding (A28247) determining that the plan was a reorganization within the meaning of the Act affirmed, in other respects rendered moot; appeal from writ of review proceeding (A29096 and A29109) affirmed.

---

[10] Portland sought a writ of review from the districts' adoption of the plan, apparently uncertain as to the appropriate forum for review, and the trial court dismissed the review on the ground that the Board was the proper and only forum available.